# In the United States Court of Federal Claims

No. 22-237
(Filed:  14 December 2022) *

*******************************************

CGS-ASP SECURITY, JV, LLC,     *

       *

     Plaintiff,     *

       *    Pre-Award Bid Protest; Motion for

v.          *    Judgment on the Administrative Record;

       *    Motion to Supplement; SAM Registration;

THE UNITED STATES,      *    Failure to Register.

       *

     Defendant.     *

       *

*******************************************

      *Robert Nichols*, Nichols Liu, LLP, with whom were *Andrew Victor*, *Michael Bhargava*, and *Madison Plummer*, all of Washington, DC, for plaintiff.

      *Daniel D. Falknor*, Trial Attorney, Commercial Litigation Branch, with whom were *Corinne A. Nioshi*, Assistant Director, *Patricia M. McCarthy*, Director, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, and *John Cox* and *Kathleen Martin*, Attorney Advisors, Department of State, all of Washington, DC, for defendant.

## OPINION AND ORDER

**HOLTE, Judge.**

      Plaintiff CGS-ASP Security, JV, LLC brings this pre-award bid protest challenging the U.S. Department of State's disqualification of plaintiff from a solicitation for security services at the U.S. mission in Paris, France, for plaintiff's failure to register in the System for Award Management ("SAM") prior to submitting its bid.  Two similar cases related to SAM have been decided by Judge Hertling and Judge Somers on 8 April 2022 and 28 July 2022, respectively. Both judges heard protests from disappointed bidders challenging the Department of State's determinations of ineligibility to remain in the competitive range for the awards of contracts to provide local guard services at U.S. embassies in Slovakia and Angola.  Judge Hertling ruled the Department of State violated the Federal Acquisition Regulation when the agency did not require a bidder's joint venture to be registered in SAM.  Judge Somers determined the Department of State failed to amend its solicitation, despite a functional change to the SAM registration

---

     * This Opinion was initially filed under seal pursuant to the protective order in this case.  The Court provided the parties seven days to submit proposed redactions, if any, before the Opinion was released for publication.  Neither party proposed redactions.  This Opinion is now reissued for publication in its original form.

requirements following receipt of proposals.  Judge Hertling's case is currently on appeal at the Federal Circuit.

In this case, plaintiff alleges the government's decision to reject plaintiff's proposal and exclude it from the procurement for failure to register in SAM lacks a rational basis.  Plaintiff seeks to permanently enjoin the Department of State from awarding the contract.  Plaintiff also seeks to complete the administrative record with any other documents the Department of State used in deciding to exclude plaintiff and to supplement the administrative record with evidence from the Internal Revenue Service and the General Services Administration.  For the following reasons, the Court:  (1) denies plaintiff's motion to complete and supplement the administrative record; (2) denies plaintiff's motion for judgment on the administrative record; (3) grants the government's cross-motion for judgment on the administrative record; and (4) denies as moot the government's partial motion to dismiss, as agreed to at oral argument if plaintiff's motion to supplement the record is denied.

## I.    Factual Background

### A.    Pre-Solicitation, Solicitation, and SAM Requirements

Plaintiff, a joint venture comprised of Continuity Global Solutions, LLC ("CGS") and Argus Security Projects Ltd. ("ASPP"), formed on 22 December 2020 with the goal of providing "local guard services in France for . . . the U.S. Department of State."  Admin. R. ("AR") at 1353, ECF No. 19-2 (Joint Venture Agreement).  In July 2021, the Department of State ("DOS" or "the government") released its pre-solicitation notice for local guard services ("LGS") at the U.S. Mission in Paris, France.  AR at 1–5, ECF No. 19-1 (Pre-Solicitation Notice).  The pre-solicitation notice states bidders "shall have active registration on the [SAM]" and provides the link to the SAM website.  AR at 3 (Pre-Solicitation Notice).  SAM is the federal government's primary repository for prospective awardee information and the "centralized government system for certain contracting, grants, and other assistance-related processes."  AR at 67 (Request for Proposals ("RFP" or "solicitation")).  Under Federal Acquisition Regulation ("FAR") 52.204-7(b)(1), contractors seeking to bid on government procurements must be registered in SAM when they submit their bids.  DOS released its request for proposals ("RFP") on 13 October 2021 with a deadline for proposals of 29 November 2021.  AR at 7, 92 (RFP).  As an RFP, the solicitation uses negotiation procedures rather than closed bidding, with the award to go to the offeror who provided the lowest price technically acceptable ("LPTA").  AR at 7, 110 (RFP).  Although the RFP states the government "may waive informalities and minor irregularities in offers received," AR at 110 (RFP), section L.11.1 additionally requires active SAM registration, stating specifically, "[a]ny offeror whose registration is not active in SAM at the time of proposal submission will be excluded from the process and their proposals will not be evaluated."  AR at 94 (RFP).

### B.    Plaintiff's SAM Registration and Troubleshooting

The General Services Administration ("GSA") operates SAM, a government-wide registry for vendors doing business with the Federal government, which has four registration requirements:  "(1) The Offeror has entered all mandatory information"; (2) The Offeror has

completed the required sections of the registration in SAM; "(3) The [g]overnment has validated all mandatory fields," including the Taxpayer Identification Number ("TIN") with the Internal Revenue Service ("IRS"); and "(4) The government has marked the record 'active'." FAR 52.204-7(a)(1)–(4). Government contractors seeking assistance with the SAM registration process can contact the Federal Service Desk ("FSD"), GSA's client helpdesk. *See* Am. Compl. ¶ 20, ECF No. 14. FSD's website states: "It takes [five] weeks for the IRS to fully process a NEW TIN. You should not attempt to register [in SAM] with a new TIN before at least [five] full weeks have passed from the date of the notice from the IRS." Fed. Serv. Desk, *Why is SAM validating TIN (Taxpayer Identification Number) information with the IRS?*, Answer to Frequently Asked Question, https://gsafsddev.servicenowservices.com/fsd-gov/answer.do?sysparm_kbid=81d0e67e6f585100211956532e3ee42e&sysparm_search= (last visited Dec. 5, 2022). Although the administrative record is silent as to whether plaintiff ever saw this webpage, it was available before and during DOS's solicitation process and plaintiff's SAM registration process.

Plaintiff incorporated as an LLC on 26 October 2021, two weeks after DOS issued its RFP. Am. Compl. ¶ 14. The IRS issued plaintiff's Employee Identification Number ("EIN"), a type of TIN used for SAM registration, on 5 November 2021, and plaintiff completed its portion of the SAM registration ten days later, 15 November 2021. *Id.* ¶¶ 16–17. After completing its portion of the SAM registration, plaintiff received an automated response stating it "could take [IRS] two business days" to validate the TIN and complete the registration. *Id.* ¶ 17. This two-day response is standard only for "existing TINs that have already reached the IRS's master files." Gov't MJAR Reply at 6, ECF No. 29. Two days later, 17 November 2021, however, plaintiff received an email alerting plaintiff its SAM registration was unsuccessful because plaintiff's TIN had failed to validate. Am. Compl. ¶ 18. Plaintiff attempted multiple times to register in SAM, but plaintiff's registration was rejected each time due to its failed TIN validation. AR at 6949–53, ECF No. 19-8 (Agency-Level Protest Attached Emails from donotreply@SAM.gov to dbanks@continuitygs.com (Mr. David Banks, VP Business Development of Continuity Global Solutions)); Am. Compl. ¶¶ 19–20. On 18 November 2021, the contracting officer ("CO") issued an amendment to the RFP, extending the deadline to 3 December 2021. AR at 396 (RFP Amendment 2). Plaintiff contacted IRS and GSA via FSD toward the end of November about its difficulty with SAM registration, and IRS responded it could take five weeks from an EIN's issue date for it to be ready to validate in SAM. Am. Compl. ¶ 20. To help plaintiff, FSD recommended changing the TIN to the actual person responsible for paying the joint venture's taxes—Mr. Steve Hartsuff, plaintiff's CEO. *Id.* Plaintiff followed FSD's suggestion to no avail. *See id.*

## C. Plaintiff's Proposal Submission and Rejection

The CO extended the deadline several more times. AR at 864 (RFP Amendment 6), 982, (RFP Amendment 7). After plaintiff requested DOS amend the solicitation's transition period to give the awardee time to comply with local labor regulations, AR at 977–79 (Letter to CO Gutierrez), the CO expanded the transition period and extended the proposal deadline to 15 December 2021. AR at 1087 (RFP Amendment 8). Plaintiff waited to hear if its SAM registration had succeeded, but when the proposal deadline on 15 December 2021 arrived, plaintiff submitted its proposal despite still lacking an active SAM registration. AR at 1197

(Proposal).  Plaintiff notably never asked DOS for an extension to resolve its SAM registration issues, nor does the administrative record indicate plaintiff ever alerted DOS to its difficulty with the SAM registration process.  Two weeks after submitting its proposal, plaintiff again attempted to register in SAM for the first time since its rejection at the end of November.  AR at 6948 (Email from SAM.gov to Mr. Banks).  On 4 January 2022, DOS alerted plaintiff it was not eligible for the award because it had not registered in SAM, thereby violating Section L.11.1 of the RFP.  AR at 6934 (Letter from CO Gutierrez to Plaintiff ("CO Letter")).  After DOS excluded plaintiff and one other bidder for failing to register in SAM, three other offerors remained in the competitive range.  AR at 6975 (Competitive Range Determination at 4).  When plaintiff contacted FSD on 8 January 2022, FSD recommended switching the TIN back to CGS-ASP Security, JV, LLC—how plaintiff originally submitted its information in SAM.  Am. Compl. ¶ 23–24.  Plaintiff's SAM registration was approved after the change back and after it had already been excluded.  *Id.* ¶ 25.

Plaintiff filed an agency-level protest on 10 January 2022, asserting:  (1) the government was at fault for plaintiff's lack of SAM registration; (2) the CO had discretion to waive plaintiff's failure to register; and (3) excluding plaintiff violated the Competition in Contracting Act ("CICA") by unduly restricting competition.  AR at 6937–39 (Agency-Level Protest at 1–3).  Plaintiff requested DOS reverse its decision to exclude plaintiff.  *Id.*  The CO rejected the protest, claiming the RFP's language unambiguously requires offerors to be registered in SAM at the time they submit a proposal, giving the CO no discretion on the matter.  AR at 6969–71 (CO Response Letter).  The CO further responded the government sufficiently promoted competition because it would still award the contract to the offeror who offered the LPTA.  AR at 6970 (CO Response Letter).  Plaintiff appealed to the Government Accountability Office ("GAO"), using the same arguments.  *See* AR at 6994–7001 (GAO Protest).  GAO denied plaintiff's protest.  *See* AR at 7162–64 (GAO Decision).

## II.   Procedural History Before the Court

Finding no relief from its first two protest attempts, plaintiff filed suit in this Court on 2 March 2022, ECF No. 1.  On 7 March 2022, the Court held a status conference, ECF No. 9, and the parties submitted a joint status report ("JSR") in which the government agreed to stay its award during proceedings in this bid protest, ECF No. 10.  The next day, plaintiff amended its complaint, Am. Compl.  Per the briefing schedule, ECF No. 12, the government filed the administrative record on 25 March 2022, ECF No. 19, and plaintiff moved to supplement and complete the record on 8 April 2022, ECF No. 20 ("Pl.'s Mot. Suppl. & Complete R.").  The government responded on 22 April 2022, ECF No. 21 ("Gov't Mot. Suppl. & Complete R. Resp."), and plaintiff filed its reply one week later, ECF No. 22 ("Pl.'s Mot. Suppl. & Complete R. Reply").  The parties attempted to stipulate facts to "obviate the need for a decision on plaintiff's motion to supplement" the administrative record, but they were unable to do so.  JSR at 1, ECF No. 23.  Plaintiff still sought a ruling on its motion to complete and supplement the record before starting motion for judgment on the administrative record ("MJAR") briefing.  *Id.*  The Court held another status conference on 13 May 2022, and the parties provided a briefing schedule for the parties' MJARs, ECF No. 24.  The Court adopted the parties' proposed schedule and determined the best course was to stay consideration of plaintiff's motion to supplement and complete the administrative record until MJAR briefing was complete, ECF No. 25.  Plaintiff

filed its MJAR on 31 May 2022, ECF No. 26 ("Pl.'s MJAR").  The government filed its partial motion to dismiss, cross-MJAR, and opposition to plaintiff's MJAR on 17 June 2022, ECF No. 27 ("Gov't Cross-MJAR").  Ten days later, plaintiff filed its response and reply, ECF No. 28 ("Pl.'s MJAR Resp. & Reply"), and the government replied on 7 July 2022, Gov't MJAR Reply. On 21 September 2022, the Court held oral argument, ECF No. 30.  At oral argument, the Court inquired about the timing of the contract and agreed to make an expedited final MJAR decision.[1] *See* Oral Arg. Tr. ("Tr.") at 139:1–16, ECF No. 38.

## III.     Parties' Arguments

### A.     Plaintiff's Motion to Complete and Supplement the Administrative Record

Plaintiff asserts, the administrative record must be supplemented and completed because the record is insufficient to explain why the government did not validate plaintiff's SAM registration prior to plaintiff's proposal submission.  *See* Pl.'s Mot. Suppl. & Complete R. at 4. Plaintiff first moves to complete the record with any documents DOS may have used in deciding to exclude plaintiff, such as documents made by the CO and DOS relating to checking plaintiff's registration status in December 2021 and January 2022.  *Id.* at 5.  Plaintiff explains completion is appropriate to include in the record "materials generated or considered by the agency itself during the procurement process."  *Id.* at 5 (quoting *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 167 (2011)).  By completing the record, plaintiff hopes to shed light on the reasons for plaintiff's validation post-proposal submission and ultimate exclusion.  *Id.* at 4–5. Plaintiff also moves to supplement the record with "evidence from the IRS relating to its TIN . . . and evidence from GSA relating to the [g]overnment's validation of mandatory data fields during the SAM registration process."  *Id.* at 5–6.  Plaintiff asserts supplementation is appropriate when the "existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act ('APA')]."  *Id.* (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009)).  With supplementation, plaintiff believes the record will reflect how these agencies contribute to the process of SAM validation and identify a supposed error plaintiff believes led to its post-proposal SAM validation.  *See* Pl.'s Mot. Suppl. & Complete R. at 5.

The government contends plaintiff's motion to supplement and complete the administrative record amounts to a "fishing expedition," because the record is complete and does not require supplementation.  Gov't Mot. Suppl. & Complete R. Resp. at 1.  According to the government, there are no documents related to plaintiff's SAM registrations that were not included in the administrative record.  *Id.* at 5.  The record, therefore, is already complete.  *Id.* The government explains supplementation is limited to "cases in which the omission of extra-record evidence precludes effective judicial review."  *Id.* at 4 (quoting *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018)) (internal quotations omitted). The purpose of this narrow scope is to prevent the inclusion of "new evidence" that would "convert the arbitrary and capricious standard into effectively de novo review."  *Id.* at 4.  The

---

[1] At oral argument, the Court asked, "is there a firm date by which the State Department would appreciate or preserve resources if the Court had its decision by."  Tr. at 139:1–16.  The government stated, "[T]he State Department's not ready for an award, so it's looking like at least a month or two probably . . . .  I think the State Department is going to have to get a bridge contract in through . . . December."  *Id.*

government argues adding evidence never before DOS would constitute a new record and a de novo evaluation of the government's actions. *Id.* at 6.

**B.       The Parties' Cross-MJARs**

**1.       The Rationality of DOS's Decision to Exclude Plaintiff**

Plaintiff asserts the government acted arbitrarily and capriciously and abused its discretion when it elected to exclude plaintiff from competition after the government failed "to timely complete its part" in plaintiff's SAM registration process. Pl.'s MJAR at 6–7. Plaintiff contends the government's alleged failure to timely validate plaintiff's TIN violates the APA's "principle of procedural regularity." *Id.* at 7.  According to plaintiff, the principle of procedural regularity allows courts to consider whether agencies followed their own procedures and whether multiple agencies followed "established process[es]" when interagency consultation occurred. *Id.* (citing *Thomas v. United States*, No. 99-5055, 1999 WL 820446, at *1 (Fed. Cir. Oct. 7, 1999)).  Since plaintiff timely completed its portion of the SAM registration process, the onus shifted to the government to complete plaintiff's registration. *See id.* at 8.  The government, however, failed to validate plaintiff's TIN. *See id.*  Since the government was responsible for plaintiff's lack of SAM registration, plaintiff contends, the government acted arbitrarily and capriciously by excluding plaintiff. *Id.* at 8–9.  Plaintiff further alleges the government "has never denied that its own error caused it to deviate from the procedural regularity with which it normally performs its part of the SAM registration process under FAR 52.204-7." Pl.'s MJAR at 9.  Plaintiff avers the government control exception to untimely submitted offers should apply because plaintiff's SAM registration information was already in the government's computer system, and, therefore, at the government's mercy. *Id.* at 10.  Finally, plaintiff contends DOS abused its discretion by excluding plaintiff because "the RFP stated that '[p]roposals not received in accordance with these instructions *may* be considered unacceptable and rejected.'" *Id.* (quoting and adding emphasis to AR at 1175 (RFP § L.11)). Plaintiff asserts DOS, as a result of this language, "could have accepted [their] proposal without the SAM registration[.]" *Id.* at 11.

The government contends its decision to exclude plaintiff was rational because DOS precisely followed the requirements of the solicitation, and plaintiff's own error caused it to not timely complete its SAM registration. Gov't Cross-MJAR at 15. The government explains it was obliged to exclude plaintiff's submission because of plaintiff's failure to properly register in SAM. *Id.* at 15.  The solicitation, by incorporating FAR 52.204-7, explicitly requires the offeror to be registered in SAM at the time of proposal submission. *Id.*  The language of Section L.11 of the solicitation restates this requirement and indicates DOS's lack of discretion, stating, "any offeror whose registration is not active in SAM at the time of proposal will be excluded from the process and their proposals will not be evaluated." *Id.* at 15–16 (emphasis added).  Plaintiff submitted its proposal without SAM registration, so DOS had to disqualify plaintiff. *Id.* at 16. The government also challenges plaintiff's assertion the government's error caused plaintiff to not be fully registered in SAM at the time of proposal submission. *Id.* at 19.  First, no government agency promised plaintiff the SAM registration would be completed by a specific date. Gov't Cross-MJAR at 19.  Second, the government argues, there is no statute or regulation requiring the government to approve SAM registrations within a certain timeframe. *Id.* at 20–21.

Third, plaintiff had notice of the need to build in time for SAM registration. *Id*. at 21. In 2018, FAR 52.204-7 was amended to include a warning about timely SAM registration, stating, "[p]rocessing time should be taken into consideration when registering. Offerors who are not registered in SAM should consider applying for registration immediately upon receipt of the solicitation." *Id.* at 21–22 (quoting FAR 52.204-7(d)). Ultimately, the government argues it acted rationally in excluding plaintiff because plaintiff failed, of its own accord, to meet the solicitation's SAM registration requirements. *Id.* at 15.

## 2. Whether DOS's Decision to Exclude Plaintiff Violated CICA and Whether Plaintiff's CICA Challenge Is Untimely

Plaintiff asserts its disqualification from the procurement due to DOS's application of FAR 52.204-7 disregards the competition requirement of CICA. Pl.'s MJAR Resp. & Reply at 9; Pl.'s MJAR at 12. Plaintiff explains the goal of CICA is to achieve fair competition, and it does so by forbidding requirements in solicitations that are "unduly restrictive and serve no legitimate purpose." Pl.'s MJAR at 12. DOS precisely followed FAR 52.204-7 when it excluded plaintiff's proposal based on its lack of a validated SAM registration, which plaintiff asserts, resulted from a government error. *Id.* According to plaintiff, this strict enforcement amounts to an undue restriction because it "diminished competition for this procurement for invalid reasons." Pl.'s MJAR Resp. & Reply at 9. Plaintiff argues by enforcing an undue restriction, especially considering the government error involved, DOS failed to promote full and fair competition and thereby violated CICA. Pl.'s MJAR at 12–13.

The government contends plaintiff failed to raise its CICA challenge prior to proposal submission, as is required by *Blue & Gold*. Gov't Cross-MJAR at 23 (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007)). The government explains under *Blue & Gold*, "[a]ny challenge to the terms of the solicitation must be brought prior to proposal submission." *Id.* The purpose of this rule is to promote a fair bidding process by preventing bidders from raising defects when they can reenter the bidding process with the benefit of information about competitors. *See id.* at 24. Plaintiff had time between the 13 October 2021 solicitation and its 15 December proposal submission to raise concerns about the FAR 52.204-7 requirements. *Id.* By not raising this issue prior to submission, the government argues plaintiff waived its ability to raise its claim of CICA now. *Id.*

## C. The Government's Partial Motion to Dismiss

The government moves the Court to dismiss plaintiff's claims regarding GSA and IRS for lack of jurisdiction. *Id.* at 9–14. DOS asserts this Court does not have jurisdiction over plaintiff's demands against GSA and IRS because the Tucker Act does not provide jurisdiction over actions not "in connection with a procurement." Gov't Cross-MJAR at 10–11 (citing *AgustaWestland N. Am., Inc.*, 880 F.3d at 1330). DOS supports its argument by emphasizing GSA and IRS, unlike DOS, are not the procuring agency in this solicitation. *Id.* at 11–14. It is impossible, DOS therefore contends, for either GSA or IRS to take any action "in connection with a procurement." *Id.* at 14. While DOS's actions are clearly connected to its procurement for LGS at the Mission in Paris, France, GSA and IRS never made an agreement with DOS to provide procurement-related services, nor were they aware of DOS's solicitation in the first

place. *Id.* at 11–12. While SAM registration is necessary for winning a procurement contract, and TIN validation is necessary to register in SAM, these agencies' services "are not linked to a single procurement." *Id.* at 12. DOS supports its assertion by demonstrating the SAM website acts as a general service provider whose services potential contractors may use "to 'create and run contract data reports'" and "search for wage determinations and other forms of Government funding called assistance listings (e.g., grants or loans.)." *Id.* DOS further asserts the three agencies operate entirely independently. Gov't Cross-MJAR at 12. DOS, therefore, had no knowledge of plaintiff's difficulty with SAM registration, and if DOS did learn about it, DOS would have been powerless to help. *Id.* ("Nor does the State Department have any control over SAM registration."). DOS also rebuts plaintiff's assertion—this Court has jurisdiction over alleged APA violations because the APA is connected to a procurement—by demonstrating plaintiff's case, *RAMCOR Servs. Grp., Inc. v. United States*, refers not to a violation of the APA but rather to a violation of 31 U.S.C. § 3553(c)(2), which is evaluated under the arbitrary and capricious standard. Gov't MJAR Reply at 2 (citing 185 F.3d 1286 (Fed. Cir. 1999)). DOS argues exercising jurisdiction over plaintiff's claims regarding GSA and IRS would expand this Court's bid protest jurisdiction "'far beyond the procurement context'" to include non-acquiring agencies for claims "only tangentially related to a Government procurement." Gov't Cross-MJAR at 13 (quoting *Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1381 (2018)).

Plaintiff contends this Court does have bid protest jurisdiction over its claims against GSA and IRS because the phrase "'in connection with' is 'very sweeping in scope'" and covers the government's actions here. Pl.'s MJAR Resp. & Reply at 10–11 (quoting *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008)). Plaintiff contests the government's claim GSA's and IRS's actions are only tangentially related to the procurement by arguing GSA and IRS play a role in the procurement process by overseeing SAM registration. *Id.* at 12. The government violated the APA, and the APA is in connection with a procurement, so this Court has bid protest jurisdiction, plaintiff argues. *Id.* at 11 (citing *RAMCOR Servs. Grp., Inc.*, 185 F.3d at 1290).

## IV.   Legal Standards

### A.   Bid Protest Jurisdiction and APA Review

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), provides this court jurisdiction over "action[s] by an *interested party* objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation *in connection with* a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (emphasis added); Administrative Dispute Resolution Act of 1996, Pub. L. No. 104–320, § 12, 110 Stat. 3870, 3874–76. The term "interested party" means "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551(2)). "[T]o prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). "[T]he Federal Circuit has held that

'[t]he operative phrase "in connection with" is very sweeping in scope.'" *Space Expl. Techs. Corp. v. United States*, 144 Fed. Cl. 433, 439–40 (2019) (quoting *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999)). Though this court's bid protest jurisdiction is broad, it nevertheless "is exclusively concerned with procurement solicitations and contracts." *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010).

The Court evaluates bid protests under the framework laid out in § 706 of the APA.[2]  28 U.S.C. § 1491 (b)(4); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). "[T]he proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A):  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004) (citing *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000)). An agency's action is arbitrary, capricious, or an abuse of discretion if "the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Since the arbitrary and capricious standard is "highly deferential," a reviewing court must "sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts*, 216 F.3d at 1058 (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)). A court, therefore, will not "substitute its judgment" for the agency's so long as the agency's decision was reasonable. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998–99 (Fed. Cir. 2018) (citing *R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1322 (Fed. Cir. 2003)).

## B.     Judgment on the Administrative Record in a Bid Protest

"[Rule] 52.1(c) [of the Rules of the Court of Federal Claims ('RCFC')] provides for judgment on the administrative record." *Huntsville Times Co. v. United States*, 98 Fed. Cl. 100, 104 (2011); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1353–54 (Fed. Cir. 2005). RCFC 52.1(c), previously RCFC 56.1, was "designed to provide for trial on a paper record, allowing fact-finding by the trial court." *Bannum*, 404 F.3d at 1356. The court may set aside an agency action if plaintiff has proven "either:  (1) the procurement official's decision lacked a

---

[2] "The Tucker Act, as amended by ADRA, requires the COFC in a bid protest case to apply the APA's standard of review, pursuant to which government agency action is reviewed to determine whether it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'without observance of a procedure required by law.'"  Matthew H. Solomon, *Court of Federal Claims Jurisdiction, Practice, and Procedure* 8-37 (2016) (footnote omitted) (citing 28 U.S.C. §1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); *Resource Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1243 (Fed. Cir. 2010) (citing 28 U.S.C. §1491(b)(4) and noting "[t]he ADRA also directed the court to use the standards of review provided by the APA in reviewing the bid protest suits"); *American Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1300 (Fed. Cir. 2001) ("[W]hile pre-ADRA protests brought in the Court of Federal Claims were governed by a narrow standard of review, *see Keco Indus., Inc. v. United States*, 203 Ct. Cl. 566, 492 F.2d 1200, 1203–04 (1974), the ADRA expressly made the APA standard of review applicable to all bid protest actions . . . .")).

rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Garufi*, 238 F.3d at 1332.  The rational basis test requires the court to ask "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Dell Fed. Sys., L.P.*, 906 F.3d at 992 (quoting *Banknote Corp. of Am., Inc.*, 365 F.3d at 1351) (internal quotations omitted).  "When a challenge is brought on the second ground, the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Garufi*, 238 F.3d at 1333 (quoting *Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)).  "[D]e minimis errors do not require the overturning of an award." *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996) (emphasis omitted). "De minimis errors are those that are so insignificant when considered against the solicitation as a whole that they can safely be ignored and the main purposes of the contemplated contract will not be affected if they are." *Id.* (quoting *Andersen Consulting v. United States*, 959 F.2d 929, 935 (Fed. Cir. 1992)) (internal quotations omitted).  A bid protest plaintiff must establish alleged "errors in the procurement process significantly prejudiced" plaintiff by showing "there was a 'substantial chance' it would have received the contract award but for the errors." *Bannum*, 404 F.3d at 1353 (quoting *Info. Tech. & Apps. Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)).

## C.    Motion to Dismiss

RCFC 12(b)(1) allows a party to assert via motion the defense of lack of subject-matter jurisdiction.  "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018) (quoting *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014)) (internal quotations omitted).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted).  The facts as alleged "must be enough to raise a right to relief above the speculative level[.]" *Id.*  When the court decides "on a motion to dismiss for lack of jurisdiction, the court is not confined to an examination of the complaint but may take into account 'evidentiary matters outside the pleadings.'" *Thomas v. United States*, 34 Fed. Cl. 619, 621 (1995) (quoting *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985)).

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal citations omitted).  The Court of Federal Claims has jurisdiction to the extent Congress has consented, and no further. *Id.* at 587–88.  "The party seeking to invoke the [Court of Federal Claims'] jurisdiction must establish that jurisdiction exists by a preponderance of the evidence." *Hymas v. United States*, 810 F.3d 1312, 1317 (Fed. Cir. 2016).

The Tucker Act grants the Court of Federal Claims jurisdiction "over objections to a solicitation, objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation *so long as these objections are in connection with a procurement or proposed procurement*." *Sys. Application & Techs., Inc. v. United States*, 691

F.3d 1374, 1380–81 (Fed. Cir. 2012) (emphasis added); § 1491(b)(1).  A protestor must assert a "non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement" for the court to exercise jurisdiction in a bid protest.  *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1345 n.1 (Fed. Cir. 2008).

### D. Motion to Supplement and Complete the Administrative Record

"It is well settled that the 'primary focus' of the court's review of agency decision making 'should be the materials that were before the agency when it made its final decision.'" *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 166 (2011) (quoting *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 349–50 (1997)).  "[T]o perform an effective review pursuant to the APA, the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process." *Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 92 (2011) (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).  "[A]gencies 'exercise some judgment in furnishing the court with the relevant documents'" in the agency record for the court to review.  *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 166 (quoting *Cubic Applications, Inc.*, 37 Fed. Cl. at 350).  "Granting agencies the authority to retroactively create an administrative record once the adversarial process has commenced, however, 'may preclude the "substantial inquiry" and "thorough, probing, in-depth review" the court must perform' in bid protests."  *Id.* (quoting *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 156 (1997)).  As a result, "[i]n order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence . . . aimed at determining . . . whether the record provides an adequate explanation to the protestor or the court as to the basis of the agency action."  *Cubic Applications, Inc.*, 37 Fed. Cl. at 350.

The Federal Circuit established the standard for supplementation of the administrative record in *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009).  In *Axiom*, the Federal Circuit explained, "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'"  564 F.3d at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).  "Thus, supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'"  *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735).  When performing this analysis, the court is "required to explain why the evidence omitted from the record frustrate[s] judicial review as to the ultimate question of whether the award . . . was arbitrary and capricious."  *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (citing *Axiom*, 564 F.3d at 1379–80).

The standard for completing the record is less stringent than that of supplementing the record.  *See Linc Gov't Servs., LLC v. United States*, 95 Fed. Cl. 155, 159 (2010).  The purpose of a motion to complete the administrative record is to "add documents relevant to the challenged agency decision that were considered by the relevant agency decisionmakers but were not included in the record."  *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019).  The RCFC list in detail the "core documents" that "qualify for inclusion in the

administrative record." *Id.* The Federal Circuit recognizes "[o]rdinarily, the government's designation of an administrative record is entitled to a presumption of completeness; however, courts have recognized that this can be rebutted by clear evidence to the contrary." *Id.*

## V.    Whether the Administrative Record Must be Completed and Supplemented

Plaintiff asks the Court to order additional production to both complete and supplement the record. Plaintiff argues completion and supplementation are both necessary because the administrative record mentions plaintiff's exclusion from the procurement for not being registered in SAM at the time of proposal submissions, but it is "completely silent" as to the cause of plaintiff's SAM registration issue. Pl.'s Mot. Suppl. & Complete R. at 4. The government counters "[t]he AR already contains all of the documents that were developed and considered by the State Department relating to its decision to disqualify [plaintiff,]" so both completion and supplementation are unnecessary. Gov't Mot. Suppl. & Complete R. Resp. at 3. The Court addresses plaintiff's motion to complete the administrative record and its motion to supplement the administrative record in turn.

### A.    Whether the Administrative Record Must be Completed

The parties initially disagreed on whether the administrative record was complete. Plaintiff argued for completion of the record with documents DOS may have used in deciding to exclude plaintiff from competition, such as documents made by the CO and DOS relating to checking plaintiff's registration status in December 2021 and January 2022. Pl.'s Mot. Suppl. & Complete R. at 5. The government asserts all materials considered by DOS during the procurement are contained in the administrative record. Gov't Mot. Suppl. & Complete Resp. at 1; Tr. at 122:22–123:1.

When a court determines whether extra-record evidence is necessary to effectuate meaningful review, it does so after examining the complete agency record. *See Joint Ventures of Comint Sys. Corp. v. United States*, 102 Fed. Cl. 235, 248, *aff'd*, 700 F.3d 1377 (Fed. Cir. 2012) ("[T]he court sought a complete administrative record that contained final decisional documents and the bases for the agency's procurement decisions."). "'Where a party seeks to add evidence to the record that consists of materials that were generated or considered by the agency during the procurement and decisionmaking process, such a request is properly viewed as a request to complete—rather than supplement—the administrative record, . . . and the court will ordinarily order the agency to complete the administrative record by adding pre-award records' that are 'relevant to the key issue[s]' in the case." *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019) (quoting *ARKRAY USA, Inc. v. United States*, No. 14-233, 2014 WL 2905127, at *4–5 (Fed. Cl. Apr. 28, 2014)). Completion of the record is appropriate only if parties are "able to suggest the need for other evidence . . . aimed at determining . . . whether the record provides an adequate explanation to the protestor or the court as to the basis of the agency action." *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 350 (1996). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

At oral argument, both parties agreed any other documentation would be supplementing the administrative record with materials not considered by DOS during procurement because the administrative record is already complete.  Tr. at 122:22–123:1 ("[THE GOVERNMENT]: . . . [O]ur position would be that the administrative record, which would be the materials developed and considered by the State Department and this procurement are complete."), 123:7–16 ("THE COURT:  So, . . . plaintiff seems to agree that the government cannot complete the administrative record . . . so the only answer has to be supplementation . . . .  [CGS]:  Yes[.]"); *see also* Gov't Mot. Suppl. & Complete R. Resp. at 3 ("The AR already contains all of the documents that were developed and considered by the State Department relating to its decision to disqualify CGS-ASP.").  Accordingly, only the question of supplementation remains because the parties agree the administrative record is complete; the Court therefore denies plaintiff's motion to complete the administrative record.  Tr. at 122:22–123:1, 123:7–16; *see Axiom*, 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

## B.  Whether the Administrative Record Must be Supplemented

Plaintiff further seeks supplementation of the record with "evidence from the IRS relating to its TIN . . . and evidence from GSA relating to the [g]overnment's validation of mandatory data fields during the SAM registration process."  Pl.'s Mot. Suppl. & Complete R. at 5–6.  Plaintiff contends the "extra-record evidence" will illustrate its invalid SAM registration was through no fault of its own but rather the government's lack of responsibility.  *Id.* at 6.  Plaintiff asserts, "[t]here is only one Federal Government, and DOS cannot hide from the fact that errors by other agencies in the SAM registration process rendered its determination of ineligibility irrational."  Pl.'s Mot. Suppl. & Complete R. Reply at 5.  The government argues DOS "did not generate or consider the documents, if any, that [plaintiff] seeks in supplementing the AR," and, therefore, supplementation is not justified.  Gov't Mot. Suppl. & Complete R. Resp. at 6.

The Federal Circuit clarified the standard for supplementation of the administrative record in *Axiom*, explaining "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'"  564 F.3d at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).  "Thus, supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'"  *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735).  The Court, as such, may order supplementation of the AR where "the existing record is insufficient to permit meaningful review consistent with the APA."  *Id.* at 1380–81.

Plaintiff asks the Court to review documents—"from both the IRS and GSA relating to CGS-ASP's SAM registration"—which DOS did not.  *See* Pl.'s Mot. Suppl. & Complete R. at 5–6.  IRS and GSA documents were not part of the materials before the agency when it made its final decision.  DOS did not generate or consider the documents plaintiff seeks in supplementing the administrative record.  Gov't Mot. Suppl. & Complete R. Resp. at 3.  Plaintiff concedes any documents from GSA and IRS are extra-record evidence.  *See* Pl.'s Mot. Suppl. & Complete R. at 5 (arguing "extra-record evidence" is necessary for judicial review).  If the documents were not "before the agency when it made its final decision," *id.*, then it is impossible for them to be considered "documentation revealing the agency's decision-making process."  *Vanguard*

*Recovery Assistance v. United States*, 99 Fed. Cl. 81, 92 (2011). Rather, the "documentation revealing the agency's decision-making process"—those the agency actually relied upon and those which explain the agency's decisions—are already in the administrative record. *Id.* at 92; Gov't Mot. Suppl. & Complete R. Resp. at 1. RCFC Appendix C dictates the content and filing of the administrative record in this court. The appendix includes a non-exhaustive list of "core documents," which are materials relevant to a protest case that may expedite final resolution of the case. *See* RCFC App. C ¶ 22. The simple fact plaintiff believes "somewhere within the GSA and IRS they know why they did not complete the validation process" does not convert any such GSA or IRS documents into "core documents" under RCFC App. C ¶ 22(i) and overcome the Court's analysis. RCFC App. C ¶ 22(i) ("correspondence between the agency and the protester, awardee, or other interested parties relating to the procurement"); Tr. at 123:21–23; *see ARKRAY USA, Inc. v. United States*, No. 14-233, 2014 WL 2905151, at *2 (Fed. Cl. June 5, 2014) ("The court has discretion to determine whether previously excluded . . . materials should be added to the administrative record."); *Allied Tech. Grp., Inc.*, 92 Fed. Cl. 226, 230 (2010) ("Appendix C, ¶ 22[] employs the words 'may' and 'as appropriate,' leaving it to the Court's reasoned discretion to determine when materials should be added to the administrative record."). In this case, evidence from these other agencies were not used by DOS during the procurement process, so an absence of IRS and GSA evidence here would not prevent an effective judicial review of this procurement. *See Axiom*, 564 F.3d at 1380.

Although plaintiff recognizes "[t]o perform an effective review . . . , the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process[,]" plaintiff fails to realize the record contains the necessary information. Pl.'s Mot. Suppl. & Complete R. at 3 (quoting *Vanguard Recovery Assistance*, 99 Fed. Cl. at 92). The government articulated all materials considered by DOS during the procurement are contained in the administrative record. Gov't Mot. Suppl. & Complete R. Resp. at 1; Tr. at 122:22–123:1. The government further provided it was responsible for the delay of SAM registration validation until 10 December 2021. Tr. at 125:1–5 ("THE COURT: . . . Every delay before December 10th was the government's responsibility because that's the normal course of action[?]  [THE GOVERNMENT]: Oh, yes . . . . That would be why the TIN match failed."). The 7172-page record already includes information upon which DOS relied when it made its decision to exclude plaintiff as well as any documentation revealing DOS's decision-making process, such as an "Individual Qualification Checklist" and all five proposals. *See* AR at 217–19, 1192–6930. Plaintiff seeks to introduce GSA and IRS data-related information to "illustrate CGS-ASP's invalid SAM registration was through no fault of CGS-ASP, but rather the Government." Pl.'s Mot. Suppl. & Complete R. at 6. DOS already acknowledged its responsibility for the delay before 10 December 2021. Tr. at 125:1–5. Supplementation to prove improper SAM registration processing before plaintiff's 15 December submission is nonsensical and would fail to add value to the issues in the protest as: (1) the government already stipulated it is responsible for a SAM registration delay before 10 December 2022 (the usual processing time); and (2) CGS did not attempt registration in SAM between 10 December 2022 and 15 December 2022. If any government agency acted improperly in some way regarding SAM registration processes for those five days, the issue is moot because the onus of registration at submission was on CGS. Further, if non-subject agencies' internal processes outside the solicitation or evaluation became part of a procurement record, the administrative record would have no end. In this case, the

- 14 -

omission of the IRS and GSA's extra-record evidence does not preclude judicial review because the record is complete, *supra* Section V.A, and plaintiff is asking to supplement the record with records from other agencies. *See Axiom*, 564 F.3d at 1381 ("The focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review.").

Plaintiff's motion to supplement the administrative record seeks to introduce "new evidence [and] 'convert the "arbitrary and capricious" standard into effectively de novo review'" by requiring the Court to review agency records not subject in this procurement. *Id.* at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735). Supplementation should not extend to materials considered only by other agencies like the IRS and GSA in this procurement because *Axiom* limits supplementation to the record before the agency during procurement. *Id.* at 1380; Tr. at 123:7–19. In this case, there is no need to look beyond DOS because materials from GSA and IRS are not "in connection with [this] procurement" as required under 28 U.S.C. § 1491(b)(1) (conferring jurisdiction to review bid protests on this court). All information necessary for effective judicial review is included in the administrative record, and supplementation is not necessary. The Court accordingly denies plaintiff's motion to supplement the administrative record. *See Axiom*, 564 F.3d at 1380.

The government agreed their motion to dismiss would be moot if plaintiff's motion to supplement the administrative record was denied because the Court would be reaching its MJAR decision based not on any records from the IRS or GSA but only of those from DOS. Tr. at 134:17–135:3 ("THE COURT: . . . [I]f the Court agrees with you related to the motion to supplement, does that not moot the motion to dismiss? . . . [W]ithout supplementation, then the Court would be reaching its MJAR decision on the administrative record as it currently stands, which contains zero information pertaining to the IRS or the GSA, so then the Court would only be reviewing actions of the State Department as the procuring agency. Would that not moot the motion to dismiss? [THE GOVERNMENT]: That probably would moot for us."). Plaintiff also agreed the efficacy of the government's motion to dismiss depends on plaintiff's motion to supplement, noting it was unaware of any Court of Federal Claims case in which the court reviewed the actions of non-procuring agencies in a bid protest. Tr. at 135:8–18. The Court accordingly finds the government's motion to dismiss moot.

## VI.    Analysis of the Parties' Cross-MJARs

The parties disagree who delayed plaintiff's SAM registration. FAR 52.204-7(a) explains SAM registration involves four steps: the first two steps require the offeror to enter mandatory information including its TIN to complete various sections, and the latter two steps require GSA to validate that information and mark the record "active." Pl.'s MJAR Resp. & Reply at 3. Plaintiff argues any delay in SAM registration was the fault of the government for failing to complete the latter two steps. *See id.* at 3–4. Plaintiff argues the government's "own error kept it from properly performing its part of FAR 52.204-7 and delayed CGS-ASP's registration in SAM." *Id.* at 3. Plaintiff also maintains the government's failure to act with procedural regularity in processing CGS-ASP's SAM registration violated the APA. *Id.* at 7–9. The government argues "CGS-ASP unnecessarily waited to apply for a TIN"; therefore, the burden never shifted to the government in steps three and four of the SAM registration process.

- 15 -

Gov't Cross-MJAR at 4 (cleaned up).  The government challenges plaintiff's assertion it was the government's error causing plaintiff to not be fully registered in SAM at the time of proposal submission for three reasons:  (1) no government agency promised plaintiff the SAM registration would be completed by a specific date; (2) there is no statute or regulation requiring the government to approve SAM registrations within a certain timeframe; and (3) plaintiff had adequate notice of the need to account for SAM registration.  *Id*. at 19–21.  To determine whether the government rationally excluded plaintiff, the Court analyzes the reasons for delay in SAM registration with caselaw regarding SAM registration and the language of DOS's solicitation.

### A.    Whether the Government or CGS Proximately Caused the Errors that Resulted in CGS's Exclusion from the Procurement

Reviewing the timeline of the case and content from oral argument, the Court explores whether the delay in SAM registration was at least in part—if not in whole—plaintiff's fault, leading to its exclusion from the procurement.  The Court first recites the timeline of the SAM registration process and then analyzes ways plaintiff could have taken different actions to ensure it was registered in SAM before submitting its proposal.  The Court specifically addresses the solicitation incentivizing plaintiff's joint venture formation, plaintiff's notice of the SAM registration requirement, and the government's lack of awareness of plaintiff's SAM registration problems.

### 1.    Timeline of SAM Registration

On 22 December 2020, CGS-ASP "form[ed] a joint venture to submit a proposal in response to, and perform any contract awarded with respect to [the State Department's] [s]olicitation . . . to provide local guard services in France for the Bureau of Diplomatic Security (DS) of the U.S. Department of State."  AR at 1353 (Joint Venture Agreement).  On 29 July 2021, DOS issued its pre-solicitation notice.  AR at 1–2.  The description section of the notice states, "Offerors shall have an active registration on [SAM]."  AR at 3.  On 13 October 2021, the solicitation included two express provisions regarding the SAM registration requirement:  FAR 52.204-7 and Section L.11.1.  AR at 67–68 (FAR 52.204-13), 94 (L.11.1 Volume I: Price Proposal).  FAR 52.204-7(b)(1) states, "An Offeror is required to be registered in SAM when submitting an offer . . . ."  FAR 52.204-7(d) warns:  "Processing time should be taken into consideration when registering.  Offerors who are not registered in SAM should consider applying for registration immediately upon receipt of th[e] solicitation."  Section L.11.1 of the solicitation listed the SAM registration requirement a second time:

> Offerors, including any offeror organized as a joint venture, *must have an active SAM registration at the time of proposal submission* and throughout the procurement process.  Any offeror whose registration is not active in SAM at the time of proposal submission will be excluded from the process and their proposals will not be evaluated.

AR at 94 (RFP at 88) (emphasis added).  The solicitation includes another provision, L.4, referring to L.11 and the directions about SAM, noting "[p]articular care should be taken to

- 16 -

respond to the requirements of the instructions for offer preparation as set forth in Section L.11[.]"  AR at 92.

CGS-ASP was incorporated on 26 October 2021 in Delaware.  AR at 7011 (David Banks Decl.), ECF No. 19-8.  On 5 November 2021, CGS-ASP received its TIN from the IRS.  AR at 6942 (IRS Letter to CGS-ASP).  The GSA's website, FSD, notes "[i]t takes 5 weeks for the IRS to fully process a NEW TIN.  You should not attempt to register with a new TIN before at least 5 full weeks have passed from the date of the notice from the IRS."[3]  Fed. Serv. Desk, *Why is SAM validating TIN (Taxpayer Identification Number) Information with IRS?*

Notwithstanding the five-week processing time and under the impetus of a 29 November 2021 proposal deadline, CGS-ASP attempted to register in SAM for the first time on 15 November 2021.  AR at 92 (RFP), 7011 (David Banks Decl.).  On 17 November 2021, CGS-ASP attempted to register twice.  AR at 7011 (David Banks Decl.).  On 18 November 2021, GSA moved the proposal deadline from 29 November 2021 to 3 December 2021.  AR at 396 (RFP Amendment 2), 6945 (email from SAM.gov to David Banks).  On 19 November 2021, CGS-ASP attempted to register in SAM again.  AR at 7011 (David Banks Decl.), 6946 (email from SAM.gov to David Banks).  Each time, however, CGS-ASP tried to register, it received an error message from the IRS.  AR at 7012 (David Banks Decl.).  On 27 November 2021, CGS-ASP contacted the IRS and GSA to resolve the situation.  *Id.*  The IRS indicated it could take five weeks from the issuance of a TIN number to be able to validate in SAM, so CGS-ASP would have to wait five weeks.  AR at 7012–13 (David Banks Decl.).  FSD instructed CGS-ASP needed to change the TIN to the person paying taxes, as opposed to the entity, but the change also resulted in an error message.  AR at 7013 (David Banks Decl.).

On 30 November 2021, GSA extended the deadline to 8 December 2021, AR at 864 (RFP Amendment 6), and then, on 7 December 2021, extended the deadline to 10 December 2021.  AR at 982 (RFP Amendment 7).  On 3 December 2021, CGS-ASP submitted a letter to DOS requesting an amendment to the solicitation extending the 90-day transition period to ensure the awardee could comply with local labor laws.  AR at 977–79 (Email and Letter from Mr. David Banks to CO Gutierrez).  In response to CGS-ASP's request, DOS extended the transition-in period to 120 days, and it extended the time for proposal submission one final time to 15 December 2021.  AR at 1087 (RFP Amendment 8).

On 15 December 2021, despite failing to register in SAM, CGS-ASP submitted its proposal.  *See* AR at 1192 (CGS-ASP Proposal).  On 4 January 2022, the CO informed CGS-ASP its proposal was not eligible for award because it failed to comply with Section L.11.1—specifically, the offeror "must have an active SAM registration at the time of proposal submission and throughout the procurement process."  AR at 6934 (4 January 2022 Letter from CO Gutierrez to Ms. Simone McCabe (Proposal Director of Continuity Global Solutions)).  On 8 January 2022, plaintiff successfully registered in SAM.  AR at 7013–14.

---

[3] The parties agree GSA's website, FSD, "published publicly on its website as early as October of 2013 that TIN validation could take as long as five weeks."  Tr. at 17:1–4, 75:4–7.  The parties, however, dispute whether the GSA's website or the IRS's website—which includes an answer to a frequently asked question that, in part, notes "it will take up to two weeks before your EIN becomes part of the IRS permanent records"—dictates the SAM registration timeline, discussed *infra* Section VI.A.3.  *See* Tr. at 17:8–19:16.

### 2. CGS-ASP Formed a Joint Venture to Bid on DOS's Solicitation, so the Delay in SAM Registration Was Partly a Result of Its Formation

The joint venture, formed on 22 December 2020, was a direct result of the solicitation: "The Partners['] desire to form a joint venture to submit a proposal in response to, and perform any contract awarded with respect to [the State Department's] [s]olicitation . . . ." AR at 1353 (Joint Venture Agreement). Plaintiff presumably read the terms of the solicitation—which expressly required SAM registration—if it prompted plaintiff's existence. Ten months after forming a joint venture, plaintiff incorporated on 26 October 2021. AR at 7011 (David Banks Decl.). When asked why incorporation was delayed, plaintiff stated "[i]t did not believe there was any time urgency to do so." Tr. at 9:7–9, 10:24–25, 11:1–4. After incorporation, plaintiff was eligible for a TIN, the prerequisite for registration in SAM. *See* AR at 6942 (Letter from IRS to CGS-ASP). Over a year after the joint venture was formed, plaintiff registered in SAM. AR at 6942 (Letter from IRS to CGS-ASP), 7014 (David Banks Decl.). Plaintiff again stated, "[I]t didn't see a particular urgency to get the validation done in a particular time" given "GAO . . . rulings saying specifically this is a minor informality." Tr. at 14:22–25, 15:17–18.

Plaintiff was not diligent in following the steps of the solicitation despite it prompting plaintiff's existence. Plaintiff could have incorporated ten months sooner, which would have expedited TIN registration and SAM validation. Plaintiff's contention there was no temporal urgency due to a lack of requirement to incorporate or register in SAM at a specific time is disingenuous given the language of the solicitation, *infra* Section VI.C, and caselaw specific to negotiated procurements, *infra* Section VI.B.3. Generally, to find the government caused compensable delay, the government must have been "the sole proximate cause of the contractor's additional loss, [so] the contractor would not have been delayed for *any other reason* during that period." *Triax–Pac. v. Stone,* 958 F.2d 351, 354 (Fed. Cir. 1992) (determining "although one cause of the resultant delay may have been the failure of the government to issue the notice to proceed within the contract deadline, another concurrent cause was [the contractor's] late performance on the earlier contract[,]" so "the delay was due to [the contractor's] own fault."). The Court, accordingly, finds plaintiff proximately caused the delay in SAM registration because, for example, it could have incorporated soon-after forming a joint venture to receive a TIN earlier. *See T. Brown Constructors, Inc. v. Pena,* 132 F.3d 724, 734–35 (Fed. Cir. 1997) (holding "[t]he Board's denial of the delay claim was correct" because "the [g]overnment was not the proximate cause of [plaintiff's] delay[; r]ather, the Board found that [plaintiff] itself was responsible for its own delay").

### 3. CGS-ASP Read the Pre-Solicitation Notice; Called the IRS; Had Access to the GSA's Website; and Read the Solicitation—All of Which Noted the Five-Week Period at Least Once

Both the pre-solicitation notice and the solicitation require registration in SAM. The pre-solicitation notice, which prompted CGS-ASP to form a joint venture, states "Offerors *shall* have an active registration on [SAM]." AR at 3 (Pre-Solicitation Notice) (emphasis added). Use of "shall" and "may" in statutes also mirrors common usage; ordinarily "shall" is mandatory and "may" is permissive. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35

(1998) ("The mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion."); *see also, e.g.*, *Rastelli v. Warden, Metro. Corr. Ctr.*, 782 F.2d 17, 23 (2d Cir. 1986) ("The use of a permissive verb—'may review' instead of 'shall review'—suggests a discretionary rather than mandatory review process.").[4]  The solicitation included four mentions of the SAM registration requirement:  FAR 52.204-7(b)(1), FAR 52.204-7(d), Section L.11.1, and Section L.4.  *See* AR at 67, 94 (RFP); *see infra* Section VI.C.

Over twelve months after incorporation, plaintiff registered in SAM on 8 January 2022.  AR at 7014 (David Banks Decl.).  At oral argument, the Court emphasized the IRS noted, on a 27 November phone call with plaintiff, plaintiff would have to wait five weeks from issuance of a TIN to register in SAM.  Tr. at 32:3–6; AR at 7012–13 (David Banks Decl.).  Plaintiff, therefore, must have calculated 10 December 2022 was "the golden time" to register in SAM (exactly five weeks after receipt of TIN) to which plaintiff responded at oral argument, "[h]ypothetically, yes[.]"  Plaintiff, however, claims "it didn't see a particular urgency to get the validation done in a particular time," Tr. at 14:22–25, yet plaintiff, anticipating a 29 November 2021 proposal deadline, attempted to register in SAM three times over a five-day span.  AR at 6944–47 (emails from SAM.gov to David Banks).

GSA operates SAM registration, and government contractors seeking assistance with the SAM registration process can contact the FSD, GSA's client helpdesk.  *See* AR at 7012–13 (David Banks Decl.).  The FSD also notes the five-week processing time between TIN registration and SAM validation.  Fed. Serv. Desk, *Why is SAM validating TIN (Taxpayer Identification Number) Information with IRS?*  At oral argument, plaintiff introduced an IRS webpage entitled "Online [TIN] Frequently Asked Question."  Tr. 17:19–23.  Under the question, "When can I use my Internet [TIN] to make tax payments or file returns," the answer, in part, reads "it will take up to two weeks before your [TIN] becomes part of the IRS's permanent records.  You must wait until this occurs before you can . . . [p]ass an IRS Taxpayer Identification Number (TIN) matching program."  *Online [TIN]:* IRS, *Frequently Asked Questions*, https://www.irs.gov/businesses/small-businesses-self-employed/online-ein-frequently-asked-questions (last visited Dec. 5. 2022).  The government, in response, emphasized the webpage from the IRS likely said five weeks at the time of the solicitation, but the update to two weeks is a result of advanced technology expediting processing times in 2022.  *See* Tr. 20:15–21:25.  Notwithstanding, GSA's website—the agency responsible for operating SAM registration—specifies "[i]t takes 5 weeks for the IRS to fully process a new TIN.  You should not attempt to register with a new TIN before at least 5 full weeks have passed from the date of the notice from the IRS."  Fed. Serv. Desk, *Why is SAM validating TIN (Taxpayer Identification Number) Information with IRS*?  "Under the canon of construction concerning inconsistent general and specific contractual provisions[, *generalia specialibus non derogant*], the specific provision . . . would control."  *ACI Techs., Inc. v. United States*, No. 18-860, 2021 WL 3117672, at *1 (Fed. Cl. June 30, 2021) (Wolski, J.); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183–84 (2012); *see, e.g.*, *Dravo Corp. v. United States*, 202 Ct. Cl. 500, 504 (1973) ("All provisions of the contract should be read together so as to make non inoperative, and specific provisions should be given precedence over general ones.").  The FSD

---

[4] "Should" sometimes is substituted for "may" as a permissive word.  *Union Elec. Co. v. Consolidation Coal Co.*, 188 F.3d 998, 1001 (8th Cir. 1999).  "Will" and "must" can be additional mandatory words.  *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1298 (11th Cir. 1998).

website was not only published in 2013 (as opposed to the updated IRS website in 2022) but also specifically notes SAM validating TIN (as opposed to solely online TINs). The FSD's specificity to SAM validation trumps the IRS's TIN instructions; plaintiff, therefore, should have anticipated a five-week wait-time to register. *See e.g.*, *Morrison-Knudsen Co. v. United States*, 397 F.2d 826 (Ct. Cl. 1968) (explaining "the established canon of construction that in case of inconsistency between general provisions and specific provisions of a contract, the specific provisions will govern").

Plaintiff reached out to IRS, AR at 7012 (David Banks Decl.); had access to the website, *see* Tr. at 17:1–4; and read the solicitation, *see* Pl.'s MJAR at 2–3, and FAR 52.204-7—all of which noted the five-week period at least once. When the contractor's claim is based upon alleged "government-caused delay, 'the contractor has the burden of proving the extent of the delay, that the delay was proximately caused by government action, and that the delay harmed the contractor.'" *T. Brown Constructors, Inc.*, 132 F.3d at 734 (quoting *Wilner v. United States*, 24 F.3d 1397, 1401–02 (Fed. Cir. 1994)). Plaintiff fails to prove the government proximately caused the delay when plaintiff had adequate notice of the SAM registration timeline. *See id.* at 734–35 ("Even were we to assume that the Government was in fact responsible for this delay for any or all of the reasons asserted by [plaintiff], we agree with the Board that the Government is not the proximate cause of [plaintiff's] damages given [plaintiff's] five week delay in starting and the delay due to weather and equipment problems. At the very least, the two parties' delays are inseparable.").

**4.     CGS-ASP Submitted a Letter to DOS Requesting an Extension of Time to Comply with Local Labor Laws but Never to Comply with the SAM Registration Requirement**

The deadline for proposal submissions was extended to 15 December 2022 after plaintiff submitted a letter to DOS requesting an amendment to the solicitation to ensure the awardee could comply with local labor regulations. AR at 977–79. Although "it would have been appropriate to request additional time" for a "SAM registration issue," plaintiff never requested an extension of the proposal deadline to complete its SAM registration. Tr. at 40:11–41:3. At oral argument, the government emphasized, "the State Department, during all these time frames, is completely in the dark. So as this is all going on, State just doesn't know what's happening and it doesn't know that CGS has these issues. It doesn't know anything . . . until January 4th when they're disqualified[.]" Tr. at 40:4–10. Plaintiff knew how to request more time, as evident in its letter to DOS in early December, yet never informed DOS of its SAM registration issues. *See* Tr. 40:4–41:3. Plaintiff bypassed the 10 December 2021 date, which was exactly five weeks after receiving its TIN, and instead registered in SAM on 8 January 2022, almost exactly nine weeks after receiving its TIN and four days after receiving its disqualification notice. AR at 7013–14 (David Banks Decl.).

In order to hold the government liable for delays, plaintiff must supply specific proof plaintiff's performance was affected by the government's undue delays. *See Triax–Pac.*, 958 F.2d at 354. Nothing prohibited sooner incorporation to receive a TIN number as a prerequisite to SAM registration, *supra* Section VI.A.2. *See* Tr. at 9:7–10. Nothing prohibited registration in SAM on 10 December 2022, *see* Tr. at 32:3–7, after the deadline was extended four times to

arrive at a 15 December 2022 proposal due date.  AR at 396 (RFP Amendment 2), 982 (RFP Amendment 7), 977–79 (Letter to CO Gutierrez), 1087 (RFP Amendment 8).  Plaintiff was not diligent.  The Court holds plaintiff failed to establish a compensable delay because it could not separate government-caused delays from its own delays.  *See, e.g., T. Brown Constructors, Inc.,* 132 F.3d at 734–35 (agreeing with the Department of Transportation Board of Contract Appeals' finding the government was not the proximate cause of the contractor's delay but rather the contractor itself was responsible for its own delay, in part due to its late start).

### B.      Whether the Government Failed to Act with Procedural Regularity in Comparison to Other Solicitations

Two decisions issued by Judge Hertling and Judge Somers provide recent perspectives on the SAM registration process.  Plaintiff argues Judge Hertling's and Judge Somers' SAM decisions—as well as GAO and Federal Circuit cases—further the doctrine of "procedural regularity" and document DOS's practice of relaxing the strict requirement of SAM registration.  Pl.'s MJAR at 7–9.  The Court will analyze the two cases before comparing the facts to this case.  The Court will then compare the facts of other cases with different solicitations to this case to determine the extent of "procedural regularity."

#### 1.      Judge Hertling's and Judge Somers' SAM Registration Decisions

Although the decision of one judge of this court does not bind another, two similar SAM-registration cases from Judge Hertling and Judge Somers are instructive—despite containing different solicitations than the one at issue.  Both judges heard protests challenging determinations by disappointed bidders who were ineligible to remain in the competitive range for the awards of contracts by DOS to provide local guard services at U.S. embassies in Slovakia and Angola, respectively.  The judges came to the same conclusion under different analyses—Judge Hertling analyzed the text and history of the FAR, whereas Judge Somers predominantly examined the procuring agency's past actions.

On 24 January 2022, Judge Hertling issued a decision in *G4S Secure Integration* ("Judge Hertling's case")—currently on appeal at the Federal Circuit—determining whether DOS had authority to waive the requirement an offeror be registered in SAM as a joint venture at the time it submits its offer.  *G4S Secure Integration LLC v. United States*, No. 21-1817, 2022 WL 211023 (Fed. Cl. Jan. 24, 2022) (Hertling, J.).  Judge Hertling held FAR 52.204-7 "requires, among other things, the offering entity to have entered all mandatory identifying information in SAM and the profile to be marked as 'active' at the time an offeror submits its offer."  *Id.* at *6.  In reaching his decision, Judge Hertling reviewed the history of the FAR clause.  *Id.* at *5–6.  The 2013 version of FAR 52.204-7 "afforded contracting officers some discretion as to when to require SAM registration."  *Id.* at *5.  Since 2018, FAR 52.204-7 no longer provides contracting officers with discretion and requires offerors to be registered in SAM when they submit an offer.  *Id.*  Judge Hertling noted:

> When the FAR Council proposed the 2018 amendment to FAR 52.204-7, the proposed amendment was not without controversy.  One commenter suggested that joint ventures be exempted from the newly proposed requirement so long as each

joint-venture entity had its own active SAM registration.  The FAR Council rejected this suggestion, explaining:  'An exception to SAM registration requirements to provide for registration of joint ventures after submission of offers but prior to award is not practicable, because the contracting officer needs to review the annual representations and certifications to evaluate the offers . . . .'  *Thus, in revising FAR 52.204-7 in 2018, the FAR Council specifically considered whether to exempt joint ventures from being registered in SAM at the time they submitted offers to RFPs and rejected the notion.*

*Id.* at *6 (internal citations omitted) (emphasis added).  He further held:  (1) a joint venture formed by two plaintiffs in the protest qualified as the "offeror" in the solicitation; and (2) the joint venture was not registered in SAM at the time of proposal submission.  *G4S Secure Integration LLC*, 2022 WL 211023, at *7.  Judge Hertling, accordingly, determined the joint venture was ineligible for award and, thus, was not prejudiced by DOS's decision to award the contract at issue in that protest to another entity.  *Id.* at *7, *9.  Judge Hertling's case provides, under FAR 52.204-7, an unincorporated joint venture is an "offeror" and, therefore, needs to itself be registered in SAM at the time of proposal submission.  *Id.* at *7.

A related case, *G4S Secure Integration* ("Judge Somers' case"), concerned a different embassy guard services procurement but involved two of the three plaintiffs in Judge Hertling's case.  *G4S Secure Integration LLC v. United States*, 161 Fed. Cl. 387, 394 (2022) (Somers, J.).  On 28 July 2022, Judge Somers analyzed:  (1) whether DOS changed its interpretation of the SAM registration requirements after Judge Hertling's 24 January 2022 decision; (2) whether the solicitation required an unincorporated joint venture to register in SAM prior to proposal submission; and (3) whether DOS was required to amend the solicitation or conduct discussions prior to eliminating plaintiff—who was not properly registered in SAM—from the competitive range.  *Id.* at 398–413.  In Judge Somers' case, the solicitation instructed:  "If the [Joint Venture ("JV")] has not formally registered under a single [Data Universal Numbering System or] DUNS [at SAM.gov], all JV partners must be registered and provide proof of registration or submission of registration."  *Id.* at 395.  DOS informed [the disappointed bidder], a British multinational private security company, it "was not properly registered as a Joint Venture in the Government's SAM.gov system at the time of proposal submission . . . .  Therefore, [the disappointed bidder] cannot be considered any further within the competitive range and is removed from consideration."  *Id.* at 395.  At the onset, Judge Somers noted "[p]laintiffs' claims . . . sidestep [Judge Hertling's] question of whether FAR 52.204-7 requires an unincorporated joint venture to be registered in SAM at the time of proposal submission."  *Id.* at 398.  He continued:

Although Plaintiffs take some indirect shots at Judge Hertling's decision, when boiled down to its simplest form, the crux of Plaintiffs' argument is that even if the January 24th decision is correct, State was still obligated to amend the solicitation when it chose at the eleventh hour to follow that decision instead of the express SAM registration requirements contained in the solicitation and State's own longstanding interpretation of those requirements.

*Id.*  Judge Somers concluded when DOS "changed its interpretation of the application of FAR 52.204-7, it was required to amend the solicitation pursuant to FAR 15.206 rather than taking the

more expedient route of simply eliminating Plaintiffs from the competitive range based on this revised interpretation." *G4S Secure Integration LLC*, 161 Fed. Cl. at 399.  In reaching his decision, Judge Somers asserted it was "beyond peradventure that State changed its interpretation of the SAM registration requirements when it removed Plaintiffs from the competitive range[,]" and "the plain language of the solicitation clearly permitted an unincorporated joint venture to meet the SAM registration requirements through the registration of each of the joint venture partners in SAM; thus, State was not applying the solicitation as written." *Id.*  Despite determining plaintiff's exclusion was justified, Judge Somers held pursuant to FAR 15.206, "State was required to amend the solicitation when it changed its requirements or terms and conditions." *Id.* at 410–13.

### 2. How This Case Compares to Judge Hertling's and Judge Somers' SAM Registration Decisions

Judge Hertling's case is distinguishable as its solicitation does not include the L.11.1 provision of this case's solicitation, which requires active SAM registration.  *See* AR at 94 (RFP).  The FAR provision, however, is the same as the one in this solicitation.  Judge Hertling focused on FAR 52.204-7's applicability to joint ventures—specifically the absence of an exemption for such entities—but the provision generally covers "System for Award Management."[5]  He found "[t]he offer submitted by [the disappointed bidder] violated FAR 52.204-7.  That provision requires, among other things, the offering entity to have entered all mandatory identifying information in SAM and the profile to be marked as 'active' at the time an offeror submits its offer."  *G4S Secure Integration LLC*, 2022 WL 211023, at *6.  This case, similarly, hinges on SAM registration.  CGS, here, was not marked as "active" in SAM until

---

[5] The procedural posture of Judge Hertling's case and its appeal to the Federal Circuit is unique.  Plaintiffs in Judge Hertling's case claimed DOS erred in awarding a contract to a joint venture not registered in SAM after receiving its TIN-equivalent for joint ventures, a DUNS number.  DOS "conceded that the joint venture . . . itself was not registered in SAM at the time it submitted its offer . . . . and [argued] 'there is no requirement that the DUNS number associated with the joint venture be registered in SAM.'"  *G4S Secure Integration LLC v. United States*, No. 21-1817, 2022 WL 211023, at *6 (Fed. Cl. Jan. 24, 2022).  Judge Hertling expressly rejected DOS's argument, holding "the FAR council explained . . . excluding a joint-venture offeror itself from the SAM-registration of FAR 52.204-7 would be 'not practicable,' because agencies rely on information in SAM to verify various certifications and representations."  *Id.* (citing 83 Fed. Reg. at 48,692).  Despite plaintiffs succeeding on the SAM registration issue, however, Judge Hertling ultimately held plaintiffs did not meet their burden to demonstrate prejudice on the merits because "[f]or both offerors, the entities owning the joint ventures were registered in SAM, but the joint ventures themselves were not registered."  *Id.* at *8.  Judge Hertling "found that State lacked discretion to waive the requirements of FAR 52.204-7, [plaintiffs] benefitted from the same exercise of discretion from which [the awardee] benefitted.  If State had correctly applied FAR 52.204-7, neither [the awardee] nor [plaintiffs] would have qualified for award."  *Id.* at *9.  Ultimately, Judge Hertling upheld the DOS award.  The government on appeal, argues the Federal Circuit "should affirm the trial court's decision in all respects" and "agree[s] . . . [a] [joint-venture] offeror must be registered in SAM at the time of proposal submission."  Def.-Appellee Resp. Br. at 11, 14, *G4S Secure Integration LLC v. United States*, No. 22-1513 (Fed. Cir. Mar. 8, 2022), ECF No. 19.  In this case, the government argues a somewhat different requirement for SAM registration before the Court of Federal Claims, noting individual entities of a joint venture must be registered in SAM after receiving their TIN numbers but does not disagree with Judge Hertling's decision regarding SAM registration for joint ventures with DUNS numbers. *See* Gov't Cross-MJAR at 4 ("A TIN is required for registration in SAM.gov."), 16–17 ("The Court should follow the persuasive reasoning of . . . Judge Hertling and find that the State Department had no authority to deviate from . . . FAR 52.204-7."); *G4S Secure Integration LLC*, 2022 WL 211023, at *6.

about a month after it submitted its offer. *See* AR at 1087 (RFP Amendment 8), 1192 (CGS-AGS Proposal), 7014 (David Banks Decl.); *see supra* Section VI.A.1.

In distinguishing Judge Somers' case from this case, plaintiff stated at oral argument Judge Somers' case "deals with a different provision[—]joint venture requirements" and "look[s] at a different provision than the SAM registration issue[—]whether . . . joint ventures are required." Tr. at 58:24–59:18. Plaintiff expressed the provision here—whether the solicitation (and FAR) requirement to register in SAM was met—is "clear on its face." Tr. at 59:20–60:1, 60:4–14 ("THE COURT: . . . in Judge Somers' case, the question was related to what is an offeror [and] does a joint venture meet that requirement . . . . Here, there's no question that plaintiff is an offeror. [CGS]: Absolutely . . . . It's clear on its face."). The Court, reviewing Judge Somers' case, *see supra* Section VI.B.1, finds his analysis is instructive because it provides a recent perspective on the SAM registration process. Like Judge Hertling's case, Judge Somers' case focused on joint ventures but offered another interpretation of the SAM registration requirements generally. Judge Somers held "'Section L.11.1[] plainly contemplated that an unincorporated joint venture would be eligible for award even if it was not registered in SAM, provided that all of the joint venture members were registered in SAM.'" *G4S Secure Integration LLC,* 161 Fed. Cl. at 400 (quoting and agreeing with plaintiffs' MJAR). The solicitation here includes a Section L.1.11, *infra* Section VI.C.5, as well, but it plainly contemplated "[o]fferors, including any offeror organized as a joint venture, must have an active SAM registration at the time of proposal submission and throughout the procurement process. Any offeror whose registration is not active in SAM at the time of proposal submission will be excluded from the process and their proposals will not be evaluated." AR at 94 (RFP). This solicitation also included the warning "[p]articular care should be taken to respond to the requirements of the instructions for offer preparation as set forth in Section L.11[.]" AR at 92 (RFP). Where Judge Somers had to "decide whether, assuming *arguendo* that State's new interpretation of FAR 52.204-7 is correct, State was required to amend its solicitation [pursuant to FAR 15.206 or by conducting discussions pursuant to FAR 15.306] to conform with its new interpretation of the FAR[,]" the Court must decide whether plaintiff followed the express provisions of the solicitation. *See G4S Secure Integration LLC,* 161 Fed. Cl. at 399.

Even though the agency in Judge Somers' case could have relaxed the SAM requirement under its solicitation, DOS does not have the same solicitation clause allowing it to do so in this case. Tr. at 112:11–17 ("THE COURT: Well, Somers' case, the solicitation has relaxation language . . . . Does this case have any relaxation language in the solicitation? [CGS]: No. . . . [N]ot in the solicitation[.]"). The government, therefore, argues this solicitation more accurately matches the solicitation in Judge Hertling's case as opposed to the one in Judge Somers' case, noting "it's more accurate, but it doesn't have the L.11.1 [clause]." Tr. at 111:15–20. In this case, DOS's solicitation includes the same SAM requirement as was in Judge Hertling's case plus the L.11.1 provision in the RFP—making it especially clear to follow the rules as written. *See G4S Secure Integration LLC,* 2022 WL 211023, at *2 ("The Solicitation expressly incorporated several provisions of the FAR, including FAR 52.204-7, 'System for Award Management.'"); AR at 67, 94 (RFP including FAR 52.204-7 and L.11.1 and excluding Alternate I and class deviation); *see infra* Section VI.C.

**3.     Whether Caselaw Supports a Doctrine of "Procedural Regularity"**

The parties disagree about the applicability of the principle of "procedural regularity" to DOS's enforcement of the SAM registration requirement.  Plaintiff contends the government's alleged failure to timely validate plaintiff's TIN violates the APA's "principle of procedural regularity."  Pl.'s MJAR at 7.  According to plaintiff, the principle of procedural regularity allows courts to consider whether agencies followed their own procedures and whether multiple agencies followed "established process[es]" when interagency consultation occurred.  *Id.*  Plaintiff timely completed its portion of the SAM registration process, so the onus shifted to the government to complete plaintiff's registration.  *See id.* at 6.  The government, however, failed to validate plaintiff's TIN.  *See id.*  Plaintiff argues "the error surrounding CGS-ASP's invalid SAM registration lies with the Government."  *Id.* at 8.  Specifically, "the State Department did not follow its *then-standard of conduct* when it disqualified CGS-ASP for untimely SAM registration."  Pl.'s MJAR Resp. & Reply at 9.  Plaintiff argues based on CGS's prior experience registering in SAM, it did not see urgency or that it had to be done at a particular time.  *See id.*; Tr. at 13:5–11 (plaintiff stating DOS previously allowed SAM registration after "the proposal submittal date but prior to the award date"), 14:22–23 (plaintiff stating it did not "see particular urgency to get the validation done in a particular time").  Plaintiff contends prior to 2022, DOS's "course of conduct and procedure was *not* to disqualify contractors for late SAM registrations."  Pl.'s MJAR Resp. & Reply at 9 (quoting *G4S Secure Integration LLC*, 2022 WL 211023, at *5 for the proposition "[t]he pre-October 2018 version of FAR 52.204-7 afforded contracting officers some discretion as to when to require SAM registration").  The government counters the amorphous principle of "procedural regularity" is supported neither by statute nor common law.  Gov't MJAR Reply at 7–8.  Instead, the procurement was governed by the terms of the solicitation, which contained a SAM registration requirement in two separate places.  *Id.* at 10.  The government argues, in essence, DOS acted in accordance with "the unambiguous terms of the solicitation" when it disqualified CGS-ASP for lack of SAM registration.  *Id.*  An explicit requirement of the solicitation under FAR 52.204-7 is the offeror must be registered in SAM at the time of proposal submission.  *Id.*  The language of Section L.11.1 of the solicitation restates this requirement and indicates DOS's lack of discretion, stating, "any offeror whose registration is not active in SAM at the time of proposal will be excluded from the process and their proposals will not be evaluated."  Gov't Cross-MJAR at 15–16.

Plaintiff argues although no caselaw outlines specific requirements, the cases "stand[] for the general principle of procedural regularity."  Tr. at 43:20–21.  Plaintiff admits the concept of "procedural regularity" has not been explicitly defined by the Supreme Court but maintains the idea has been "generally identified."  Tr. at 65:2–4.  When pressed by the Court for specific caselaw, plaintiff could not articulate a single case, simply repeating "[a]gain, the Supreme Court cases are just generally talking about the general presumption of procedural regularity. And, again, they don't talk necessarily about the presumption of procedural regularity and that courts have the power to review that when opining on executive agency decision[s]."  Tr. at 65:15–22.  Plaintiff points to a "Note" by an unnamed author entitled "Judicial Review of Agency Change" to bolster its claim "procedural regularity" is an accepted doctrine.  Tr. at 85:19–86:11 ("[CGS]: . . . It does not cite an author.  Yeah, we believe this is just published by the Harvard Law Review.  It doesn't name the author.  THE COURT:  It's an unknown law review? [CGS]:  It's odd, but I'm looking at the article right now, and it does not name the author."); *see* Notes, *Judicial Review of Agency Change*, 127 Harv. L. Rev. 2070, 2070–91 (2014) [hereinafter *Agency*

*Change*].  The note discusses changes in agency policy and the need for a standard with which courts can review such changes.  *Agency Change* at 2070.  The note, however, does not present whether, when an agency's precedential treatment of a policy conflicts with the stated policy, a court is bound to enforce the precedent over the policy.  *Id.* at 2087.  It explores the strengths and shortcomings of two converging approaches to judicial review of agency changes:  (1) applying a deferential standard that preserves an agency's ability to be flexible and precent against "regulatory ossification"; and (2) applying stricter judicial review of agency changes to guard against unfairness.  *Id.* at 2089–90.  "Judicial Review of Agency Change," however, does not suggest one approach is superior to another; it merely propounds a consistent approach should be adopted.  *See id.*

In terms of Federal Circuit precedent, plaintiff contends while "there's no discrete rule statement," the Federal Circuit "has adopted this overarching concept of procedural regularity in addressing . . . judicial review of executive agency decisions[.]"  Tr. at 65:5–10.  Despite mentioning "the cases . . . cited to aren't directly on point," plaintiff argues four cases are applicable to its argument the government acted with procedural irregularity.[6]  *See* Tr. at 65:11–14.  The Court addresses each below.

First, plaintiff argues *Jade Excavation*, a GAO protest, supports its contention procedural regularity has been overall adopted by the Federal Circuit.  B-419515, 2021 CPD ¶ 128, 2021 WL 1060118 (Comp. Gen. Mar. 18, 2021).  Although the Court is not bound by GAO decisions, the Court may consider GAO precedent in reaching its decision.  *See Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1038 n.4 (Fed. Cir. 2009) ("While not binding authority on this court, the decisions of the Comptroller General are instructive in the area of bid protests.").  In *Jade Excavation*, a disappointed bidder argued the agency should reject a competitor's bid because it did not have an active SAM registration at the time of bid submission.  2021 WL 1060118 at *2.  The case is distinguishable because it applies a different FAR provision and involves a different procurement setting.  *Jade Excavation* concerns FAR 14.405 in a sealed procurement setting, whereas the case at hand covers FAR 52.204-7 in a negotiated procurement.  FAR 14.405 states:

> A minor informality or irregularity is one that is merely a matter of form and not of substance.  It also pertains to *some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders.  The defect or variation is immaterial when the effect on price, quantity, quality, or delivery is negligible when contrasted with the total cost or scope of the supplies or services being acquired.*  The contracting officer either shall give the bidder an opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid or waive the deficiency, whichever is to the advantage of the Government.

---

[6] At both the 13 May 2022 status conference and the 21 September 2022 oral argument, the parties discussed the *Acon Traders* case where the GAO held a bid protestor was ineligible for award under the current version of FAR 52.204-7 when the protestor was not registered in SAM at the time it submitted its quote to the Army Corps of Engineers, as was required by the solicitation.  B-417558, 2019 CPD ¶ 226, 2019 WL 2635432 (Comp. Gen. June 26, 2019).  The government avers *Acon Traders* is an example of the GAO and at least one agency "applying the FAR provision as it's written."  Tr. at 95:9–16, 96:11–15.

FAR 14.405 (emphasis added).  Notably, the examples of "minor informalities or irregularities" in FAR 14.405, which is not applicable to this case, do not include SAM registration.  *See id.*; *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1347 (Fed. Cir. 2021).  Irrespective of the categorization of SAM registration under FAR 14.405, FAR 52.204-7(b)(1)—the provision governing DOS's solicitation here—explicitly states, "An Offeror is required to be registered in SAM when submitting an offer or quotation, and shall continue to be registered until time of award, during performance, and through final payment of any contract, basic agreement, basic ordering agreement, or blanket purchasing agreement resulting from this solicitation."  FAR 52.204-7(d) warns:  "Processing time should be taken into consideration when registering.  Offerors who are not registered in SAM should consider applying for registration immediately upon receipt of th[e] solicitation."  The procurement setting further distinguishes *Jade Excavation* from the case at hand.  According to FAR 14.101, the sealed bidding in *Jade Excavation* "*is a method of contracting that employs competitive bids, public opening of bids, and awards*." FAR 14.101 (emphasis added).  "A contract awarded using other than sealed bidding procedures [under 14.101,]" like DOS's solicitation at issue, "is a negotiated contract."  *See* FAR 15.  In a negotiated procurement, like the case at hand, the GAO has recognized agency discretion in allowing a bid protestor to register in SAM after the submission of an offer but before the award of a contract.  *See, e.g., Continuity Glob. Sols.-Secure Me WLL Sec., JV*, B-419875, 2021 CPD ¶ 281, 2021 WL 3722231, at *1–2 (Comp. Gen. Aug. 12, 2021).  Under a negotiated procurement, unlike under a sealed procurement, each offeror is invited to discuss his proposal with the government negotiator and is given the opportunity to ask questions and, ultimately, to make changes in his offer.  *See* FAR 15.306.  Once negotiations have been completed, the government gives each offeror an opportunity to submit a best and final offer.  *See* FAR 15.307.  Plaintiff had ample opportunity and resources to seek additional guidance on SAM registration, as mentioned *supra* Sections VI.A.3–4.  The Court finds *Jade Excavation* distinguishable.

Next, plaintiff claims *Master Pavement Line* advances the concept of procedural regularity.  *Master Pavement Line* contends when conducting a procurement pursuant to FAR 14, an agency must afford a bidder an opportunity to cure matters "not concern[ing] material obligations of the bidder, i.e., if they do not affect the price, quantity, quality, or delivery terms of the bid."  B–419111, 2020 CPD ¶ 404, 2020 WL 7629657, at *4 (Comp. Gen. Dec. 16, 2020).  In *Master Pavement Line*, the GAO explained the requirement for a bidder to be registered in SAM prior to bid submission is not material to the bid itself because it does not impact the material obligations of the bidder; rather, it is a matter concerning the bidder's responsibility.  *Id.* at *5.  *Master Pavement Line* is distinguishable from this case for reasons similar to *Jade Excavation, supra*.  Aside from the fact *Master Pavement Line* involved sealed bidding under FAR 14.405, which is not applicable here, the decision does not stand for the proposition the agency should waive the requirement for SAM registration under certain circumstances.  *Master Pavement Line*, 2020 WL 7629657, at *5.  Rather, in *Master Pavement Line*, the GAO concluded the agency should have given the bidder, who would have been the awardee but for SAM registration defect, an opportunity to cure the minor defect.  *Id.*  Thus, the decision is not only inapplicable here to a negotiated procurement under FAR 52 but also inapposite to the facts as alleged here, where the agency provided the protester two express provisions in the solicitation

regarding the SAM registration requirement—FAR 52.204-7 and Section L.11.1—to notify of the need to correct its registration defect before award.  *See* AR at 67, 94 (RFP).

Continuing its attempt to articulate the procedural regularity doctrine, plaintiff cites a 1988 Federal Circuit case:  *Voge v. United States*, 844 F.2d 776 (Fed. Cir. 1988).  In *Voge*, a medical doctor assigned to the Naval Regional Medical Center contested her Additional Special Pay ("ASP"), a form of remuneration a medical officer normally receives after executing an agreement to remain on active duty for at least one year.  *Id.* at 777.  The Federal Circuit clarified, "Congress statutorily entrusted the decision whether to terminate a medical officer's entitlement to ASP to the discretion of the military." *Id.* at 779.  "It has long been established government officials must follow their own regulations, even if they were not compelled to have them at all, and certainly if directed to promulgate them by Congress . . . ." *Id.*  In *Voge*, "the Secretary of the Navy prescribed procedural regulations to be followed when terminating ASP." *Id.*  The Navy "conceded [the doctor] was entitled to the full amount of ASP she had been denied" because the regulation was apparently violated.  *Id.*  "Absent this concession," the Federal Circuit held "procedural regularity of the termination would have been fully reviewable in the Claims Court."  *Id.*  When asked whether *Voge* required the violation of a prescribed regulation, plaintiff's counsel responded, "I don't think it has to be a prescribed regulation."  Tr. at 42:23–43:1.  At oral argument, plaintiff conceded *Voge* does not "specifically talk about course of conduct or [the] interpretation of the FAR provisions."  Tr. at 54:6–8.

Finally, plaintiff utilizes *Thomas v. United States*, in which a retired soldier filed a complaint challenging two decisions of the Army Board for Correction of Military Records regarding separation and retirement.  1999 WL 820446 (Fed. Cir. Oct. 7, 1999).  The Federal Circuit held, "While review of the procedural regularity of a challenged action is within the competence of the court, the merits or substance of the Army's decisions regarding retirement and separation are not." *Id.* at *2.  At oral argument, plaintiff argued *Thomas* stands for the "general concept" of "procedural regularity."  Tr. at 53:1–6 ("THE COURT:  Is there some clarity in . . . the *Thomas* case that talks about procedural regularity in relationship to violations of applications of regulation generally?  [CGS]:  I mean, procedural regularity is a general concept[.]").

In addition to distinguishing the cases, the Court questions the general principle of the doctrine of "procedural regularity."  At oral argument, the Court asked the overarching question of "Does a history of doing Y necessitate the government to continue doing Y?"; plaintiff admits it does not know of a case that supports the hypothetical.  Tr. at 63:19–64:4 ("THE COURT:  . . . is it not the case that if the Government has a FAR provision that says 'X' but the agency happens to have been doing 'Y', and then after a couple years they realize they've been doing 'Y' and then they start doing 'X', is that a violation of procedure?  Does a history of doing 'Y' necessitate the Government to continue doing 'Y'?  [CGS]:  No[.]").  The government responds to the same hypothetical not only is there no caselaw on procedural regularity, but also no case plaintiff cited includes Section L.11.1; the government provided leniency in this scenario by giving fair warning with the inclusion of the section stating, "any offeror whose registration is not active in SAM at the time of proposal submission will be excluded from the process and their proposals will not be evaluated."  Tr. at 63:15–16, 71:4–15; AR at 94 (RFP).  The government further argues plaintiff's "course of performance" argument would seem to violate the "parol

evidence rule," a rule of contractual construction prohibiting parties in litigation from introducing extrinsic evidence of prior or contemporaneous agreements, negotiations, or representations to modify, supplement, or contradict a written contract. Tr. at 63:17–18; *see* U.C.C. § 2-202 (Am. L. Inst. & Unif. L. Comm'n 2001). Additionally, the government contends the idea course of conduct would supersede what is in the plain language of the solicitation is inconsistent with caselaw. Tr. at 92:11–13.

As illustrated by distinguishing cases *supra*—and by plaintiff's own admission—the "course of performance" argument is unique; overall, plaintiff has no law to support its course-of-performance analysis. Tr. at 65:10–11 ("[CGS]: . . . [T]he cases that we have cited to are not directly on point."). Plaintiff, therefore, would have to show a clear violation of the FAR because there is no other requirement of course of performance. *See infra* Section VI.C. The Court, accordingly, finds the government was not irrational in its "procedural regularity." *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) ("[A] bid award may be set aside if . . . the procurement official's decision lacked a rational basis.").

### C.    Key Solicitation Provisions in Relation to FAR Provisions and RFP Sections

Plaintiff admits the solicitation's language—specifically Section L.11.1 of the RFP and FAR 52.204-7—are "clear" regarding the requirement to register in SAM. Tr. at 11:11–12:3 ("THE COURT: . . . Section L.11.1 states, 'Any offeror whose registration is not active in SAM at the time of proposal submission will be excluded from the process and their proposals will not be evaluated'; correct? [CGS]: That's a correct statement of the solicitation, . . . yes. THE COURT: Okay. And that's pretty clear, right? [CGS]: Well, it's clear . . . those are the words of the solicitation."), 12:4–8 ("THE COURT: Okay . . . so you agree that the RFP is explicit that offerors must be active in SAM at the time of proposal submission? [CGS]: That is what the FAR clause states, . . . yes."), 12:9–14 ("THE COURT: Okay. . . . in the RFP, it includes FAR 52.204-7, which states, 'An offeror is required to be registered in SAM when submitting an offer or a quotation.' [CGS]: That is what the FAR clause states[.]"). The government agrees "[t]he solicitation couldn't have been clearer." *See* Tr. at 129:19–130:3 ("[THE GOVERNMENT]: Several offerors had no problem following the terms of the solicitation. CGS is a sophisticated government contractor. . . . [T]he government has to be able to issue a solicitation and enforce its terms. That's how the entire system works, and CGS just didn't meet the terms of the solicitation. They . . . had to be disqualified under the terms of the solicitation."). The Court accordingly reviews DOS's rationale in applying the key solicitation provisions in relation to FAR provisions and RFP sections—and omitting others.

### 1.    FAR 52.204-7(b)(1)

FAR 52.204-7(b)(1), contained in the solicitation, states, "An Offeror is required to be registered in SAM when submitting an offer[.]" *See* AR at 67. At oral argument, plaintiff admitted the language is "clear on its face." Tr. at 59:20–60:1 ("THE COURT: . . . [T]he provision here, as it comes down to whether or not the FAR requirement and the solicitation requirement was met, is the (b)(1) language that says an offeror is required to be registered in SAM when submitting an offer or quotation. [CGS]: Yes . . . . And that would appear to be

clear on its face.  I agree with that.").  DOS, therefore, had a rational basis to enforce the plain language of the provision requiring CGS to be registered in SAM when it submitted its offer; CGS was registered in SAM almost a month after it submitted its proposal, so DOS rationally excluded plaintiff.  *See Garufi*, 238 F.3d at 1332 (requiring the procurement official's decision be grounded in rational basis).

### 2.  FAR 52.204-7(d)

FAR 52.204-7(d), also included in the solicitation, warns:  "Processing time should be taken into consideration when registering.  Offerors who are not registered in SAM should consider applying for registration immediately upon receipt of th[e] solicitation."  *See* AR at 67.  At oral argument, the government highlighted "CGS had many opportunities to fix what happened here.  The State Department had no idea this was going on.  So, the government . . . issued the solicitation, and CGS just ha[d] to be able to follow the simple terms of the solicitation in this case."  Tr. at 130:4–9.  Despite the FAR's warning, CGS did not adequately consider the processing time and never requested more time to rectify its SAM registration issues; CGS, in fact, never informed DOS of its SAM registration issues but did ask for the deadline to be extended to comply with local labor laws.  AR at 977–79 (Email and Letter from Mr. David Banks to CO Gutierrez); *see supra* Section VI.A.4.  FAR 52.204-7(d) specifically recommends considering processing time when registering.  With a SAM registration processing time of five weeks, *supra* Section VI.A.3, nothing prohibited plaintiff from incorporating soon after December 2020.  *See* Tr. at 8:8–10.  Incorporation in a timely manner would ensure TIN validation earlier to safeguard an opportune SAM registration time frame.  FAR 52.204-7(d) specifically advises registering in SAM "immediately upon receipt of th[e] solicitation."  CGS did not heed the warning of FAR 52.204-7(d), as it received the solicitation on 13 October 2021 and registered in SAM on 8 January 2022.  AR at 7 (RFP), 7014 (David Banks Decl.).  CGS indeed did not take into consideration the SAM registration processing time, instead registering in SAM three months after DOS published its solicitation.  AR at 3, 7014.  DOS had rational basis for excluding plaintiff for its failure to register in SAM before submitting its bid, a requirement explicit in the solicitation.  *See Garufi*, 238 F.3d at 1332 (requiring the procurement official's decision be grounded in rational basis).

### 3.  Alternate I of the FAR (2018 Amendment to FAR 52.204-7)

From 2013 to 2018, FAR 52.204-7(b)(1) contemplated "[b]y submission of an offer, the offeror acknowledges the requirement that a prospective awardee shall be registered in SAME database prior to award, during performance, and through final payment of any contract, basic agreement, basic ordering agreement, or blanket purchasing agreement resulting from this solicitation."  FAR 52.204-7(b)(1) (Rev. 2018).  In October 2018, FAR 54.204-7 was amended to read:  "An Offeror is required to be registered in SAM when submitting an offer or quotation, and shall continue to be registered until time of award, during performance, and through final payment of any contract, basic agreement, basic ordering agreement, or blanket purchasing agreement resulting from this solicitation."  The 2018 amendment also added Alternate I,[7] which

---

[7] "The FAR accommodates a major variation in a provision or clause by use of an alternate.  The FAR prescribes alternates to a given provision or clause in the FAR subject text where the provision or clause is prescribed."  FAR 52.105(a).

provides discretion to the solicitor to substitute the following (b)(1) clause:  "An Offeror is required to be registered in SAM as soon as possible.  If registration is not possible when submitting an offeror quotation, the awardee shall be registered in SAM in accordance with the requirements of clause 52.204-13, System for Award Management Maintenance."  FAR 52.204-7(b)(1), Alternate I (Oct. 2018).  "FAR 52.204-7, Alternate 1, which could have been included [in the solicitation], . . . would [have] allow[ed] a contractor [to] register[] in SAM within 30 days after award."  Tr. at 13:12–17 (plaintiff agreeing with Court's assessment of Alternate I).  The Court asked plaintiff about the absence of this provision in DOS's solicitation at oral argument.  First, the Court asked, "Did [the non-inclusion of Alternate 1] not imply that there might be more strictness associated with being registered at the time of submission?"  Tr. at 13:18–20.  Plaintiff could only respond, "Well, the non-inclusion of a particular FAR clause, that wasn't the issue at the time."  Tr. at 13:21–22.  Second, the Court asked, "If this solicitation did not have Alternate 1, wouldn't that mean that the CO lacks the flexibility to waive a SAM requirement?"  Tr. at 103:10–13.  Plaintiff replied, "Well, I think Judge Hertling would agree with you."  Tr. at 103:14–15; *see supra* Section VI.B.1.  Plaintiff argues if a solicitation provision "is not material to the proposal, and it is a minor administrative issue that can be corrected," then the solicitor can waive the SAM requirement.  Tr. at 103:19–25.[8]  If SAM registration could be waived, Alternate I would be moot because it would become the standard.  Tr. at 104:1–5.  The provision included in the solicitation required SAM registration, and DOS elected not to include Alternate I, which would have relaxed the provision.  AR at 67.  The omission of Alternate I in the solicitation further supports DOS's strict enforcement of the SAM registration requirement and subsequently plaintiff's exclusion.  *See Garufi*, 238 F.3d at 1332 (requiring the procurement official's decision be grounded in rational basis).

### 4.    8 September 2022 Class Deviation SAM Memorandum from the Office of the Under Secretary of Defense

On 8 September 2022, the Office of the Under Secretary of Defense in the Department of Defense ("DOD") issued a memorandum titled, "Class Deviation—System for Award Management," which "allow[s] the offeror to not be actively registered in SAM until 30 days after award or the date of its first invoice, whichever comes first."  Dept. of Def., Office of Under Sec'y of Def., *Class Deviation—System for Award Management* at 1, (Sept. 8, 2022).  DOS has not issued a similar class deviation for its procurements.  Tr. at 105:17–20.  The government also clarified the DOD's memorandum "wouldn't be applicable to this procurement or the State Department.  The State Department would have to request their own class deviation in . . . the file."  Tr. at 105:21–106:1.  Notwithstanding the inapplicability of the DOD memorandum to DOS, plaintiff agrees the DOD class deviation suggests COs are unable to waive SAM registration under the FAR.  Tr. at 106:16–22 ("THE COURT:  . . . [D]oes the DOD class deviation suggest that COs are unable to waive SAM registration under the FAR?  [CGS]: There's certainly that argument[.]").  Without a similar class deviation, however, the CO here is not able to waive SAM registration.  Tr. at 106:23–107:1.  The possibility of a class deviation and DOS's lack of obtaining one further supports the conclusion DOS was rational in strictly

---

[8] "[CGS]:  . . . . Our argument for the Federal Circuit is that if it's not material to the proposal and it is a minor administrative issue that can be corrected, . . . such as timely submission . . . in the proper way, [then] these things are waived regularly.  And, so, we believe that the CO . . . does have discretion to do that."  Tr. at 103:19–25.

adhering to the SAM registration requirement and excluding plaintiff.  *See Garufi*, 238 F.3d at 1332 (requiring the procurement official's decision be grounded in rational basis).

### 5.    Section L.11.1 of the RFP

Section L.11.1 of the solicitation reads:

> Offerors, including any offeror organized as a joint venture, must have an active SAM registration at the time of proposal submission and throughout the procurement process.  Any offeror whose registration is not active in SAM at the time of proposal submission will be excluded from the process and their proposals will not be evaluated.

AR at 94 (RFP).  The solicitation also includes the warning "care should be taken to respond to the requirements of the instructions for offer preparation as set forth in Section L.11[.]"  AR at 92.  The government emphasized "State added [Section L.11.1] to the Paris procurement . . . . And the point of adding this was to be absolutely clear to all offerors that this is a requirement; you have to comply with it."  Tr. at 63:3–7.  To determine the extent of DOS's obligations, the Court looks to the solicitation's plain language and gives the words their plain and ordinary meaning, unless the language is ambiguous.  *See United Cmtys., LLC v. United States*, 154 Fed. Cl. 676, 681 (2021).  The Court finds even if the government could have waived the SAM registration requirement, it was rational for the agency not to do so given Section L.11.1 and the plain language directing exclusion of offerors not registered in SAM at the time of proposal submission.  *See, e.g.*, *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980).  DOS, therefore, had a rational basis for excluding plaintiff for its failure to register in SAM before submitting its bid.  *Garufi*, 238 F.3d at 1332 (requiring the procurement official's decision be grounded in rational basis).

### D.    Whether the Government's Exclusion of CGS for Lack of SAM Registration Was Rational

The parties debate whether it was arbitrary and capricious for DOS to exclude plaintiff for failure to register in SAM before submitting its proposal.  Plaintiff asserts the government acted arbitrarily and capriciously and abused its discretion when it excluded plaintiff from competition after the government failed "to timely complete its part" in plaintiff's SAM registration process.  Pl.'s MJAR at 6–7 (cleaned up).  Plaintiff contends DOS abused its discretion by excluding plaintiff because "the RFP stated that '[p]roposals not received in accordance with these instructions *may* be considered unacceptable and rejected.'"  *Id.* at 10 (quoting and adding emphasis to AR at 94 (RFP)).  Plaintiff asserts DOS, as a result of this language, "could have accepted [their] proposal without the SAM registration."  *Id.* at 11.  The government contends its decision to exclude plaintiff was rational because DOS precisely followed the requirements of the solicitation.  Gov't Cross-MJAR at 15.  The government explains it was obliged to exclude plaintiff's submission because of plaintiff's failure to properly register in SAM.  *Id.*  The government argues it acted rationally in excluding plaintiff because plaintiff failed, of its own accord, to meet the solicitation's SAM registration requirements.  *Id.*

"[A] bid protest may be set aside if . . . the procurement procedure involved a violation of regulation or procedure." *Garufi*, 238 F.3d at 1332.  At oral argument, the Court asked plaintiff three questions to clarify its arguments:

(1) "Is there a statute or regulation that requires the government to validate a TIN and register a SAM in a specific time frame?"  Tr. at 113:24–114:1.
(2) Does plaintiff's exclusion "explicitly violate a statute or regulation?"  Tr. at 113:15–17.
(3) "[D]oes the Court have general APA jurisdiction?"  Tr. at 114:21.

In response, plaintiff noted:  (1) it "would agree [its] exclusion does not explicitly violate a statute or regulation" and instead argues the government's actions were generally arbitrary and capricious under the APA; (2) there is no statute or regulation dictating a time frame for the government to validate TIN and register a SAM; and (3) "the Court has jurisdiction to apply the APA to the agency's actions to find them arbitrary and capricious."  Tr. at 113:15–114:2, 114:22–24.  The Court addresses each but analyzes (2) and (3) together.

Plaintiff argues despite the solicitation and FAR being clear, *see supra* Section VI.C, DOS has not enforced timely SAM registration in the past.  Tr. at 62:2–6 ("THE COURT:  . . . [Y]our argument is that despite the statute being clear on its face, the Department of State has not enforced it in the past.  [CGS]:  Correct, and that's made quite clear from Judge Hertling's decision.").  As discussed *supra* Section VI.B.1, two recent cases in the Court of Federal Claims provide context to SAM registration requirements:  Judge Hertling's case and Judge Somers' case.  Judge Hertling's case—currently on appeal at the Federal Circuit—held "[plaintiff's] offer violated the FAR, because the joint venture . . . was not registered in SAM at the time it submitted its offer."  *See G4S Secure Integration LLC v. United States*, No. 21-1817, 2022 WL 211023, at \*7 (Fed. Cl. Jan. 24, 2022).  Plaintiff agreed Judge Hertling's case illustrates how the 2018 amendment to FAR 52.204-7 specifically took away any CO discretion regarding SAM registration.  *Id.* at \*5 ("Since 2018, FAR 52.204-7 requires offerors to be registered in SAM when they submit an offer.  The provision also no longer provides contracting officers with discretion."); Tr. at 108:1–6.  Plaintiff disagreed, however, the only way for the Court to find plaintiff's exclusion lacked a rational basis would be to directly disagree with Judge Hertling, noting, in part, Judge Somers' decision did not undermine Judge Hertling's decision.  Tr. at 108:15–109:9; *see G4S Secure Integration LLC v. United States*, 161 Fed. Cl. 387 (2022).  Judge Somers' case dealt with SAM registration with joint ventures, which plaintiff agreed was materially different than the issue in this case.  *G4S Secure Integration LLC*, 161 Fed. Cl. at 395.  At oral argument, plaintiff conceded there is no prescribed timeframe for the government to complete the "steps" listed in the FAR.  Tr. at 113:24–114:2.  Plaintiff, instead, asserts in "Section M.3, the government may waive informalities and minor irregularities" in bids received.  Tr. at 113:3–5; FAR 14.201-6(m) ("Solicitation Provisions").  Despite the inapplicability of Section M.3 to negotiated procurements like the one at issue, plaintiff attempts to qualify SAM registration as an "informality" necessitating the government explain a failure to waive the requirement.  *See* FAR 52.214-19 ("Contract Award–Sealed Bidding–Construction").  Plaintiff cannot articulate a statute or regulation for the government's SAM registration process, *see supra* Section VI.B.3, so its only remaining argument is a minor informality to waive what was an explicit requirement.  *See Garufi*, 238 F.3d at 1332.

Plaintiff cannot point to "an express violation" and, instead, argues it was generally arbitrary under the APA for the government to not waive the requirements explicit in the FAR without giving notice. Tr. at 113:22–23, 102:2–10 ("THE COURT: . . . . So, it was . . . irrational for the government not to waive the [SAM] requirement[?]  [CGS]: It was irrational—I'll answer yes, . . . but I'd like to qualify it a little bit.  It was irrational—or I would say it was—arbitrary for the . . . government to decide now we're not waiving without giving any notice."). Plaintiff argues the Court has general APA jurisdiction when contractors "are excluded based on an unannounced, unexplained change in the interpretation of that regulation, then the courts have held that that is an APA violation, but an express violation, no[—]it's arbitrary and capricious." Tr. at 113:19–23.  Plaintiff specifically contends the government violated steps two and three of FAR 52.204-7(b)(1) by not validating plaintiff's TIN and not marking plaintiff's SAM registration as active.  Pl.'s MJAR Resp. & Reply at 2–3; *see supra* Section VI.A.  The government counters the "steps" are just definitional and not binding on the government.  Tr. at 46:6–13 ("[THE GOVERNMENT]: . . . CGS is overstating what exactly these four requirements say, they're saying that the [g]overnment 'is required'. . . . this is . . . a definition of what it means to be registered in the System for Award Management, and it . . . just lists what the government is going to do.  So, I think the implication that it's just required to do these things in certain time frames certainly isn't in the FAR.").  Plaintiff cannot articulate a statute or regulation violated by its exclusion, citing only to the general APA.  Plaintiff ultimately agreed its exclusion does not explicitly violate a statute or regulation; thus, the government's action cannot be arbitrary and capricious because the determination requires "the procurement procedure involve[] a violation of regulation or procedure"; there is none here.  *See* Tr. at 113:19–23; *Garufi*, 238 F.3d at 1332.

## VII.    Whether the Government Discouraged Competition by Excluding CGS in Violation of CICA

Plaintiff argues DOS disqualifying plaintiff from the procurement due to DOS's application of FAR 52.204-7 violates the CICA mandate to promote competition.  Pl.'s MJAR Resp. & Reply at 9; 41 U.S.C. § 253 (requiring U.S. federal government agencies to arrange "full and open competition through the use of competitive procedures" in their procurement activities unless otherwise authorized by law).  Plaintiff further asserts CICA forbids requirements in solicitations that are "unduly restrictive and serve no legitimate purpose[.]"  Pl.'s MJAR at 12. This Court may set aside an agency action as arbitrary and capricious if plaintiff can prove "the procurement procedure involved a violation of regulation or procedure."  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

At oral argument, plaintiff conceded DOS disqualifying plaintiff from the competition did not violate any specific provision of CICA but rather undermined its general purpose.  Tr. at 119:23–12:4 ("THE COURT: . . . Which specific CICA provision governs an agency's application of the terms of a solicitation?  [CGS]: I can't cite you to a particular provision of the CICA, but by limiting competition through their actions, we believe that the purpose of the CICA to pursue competition to the maximum extent practicable has been undermined.").  To support its assertion, plaintiff cites *American Safety Council*, stating, "[T]he goal of CICA is not just any level of competition, but the best level possible under the circumstances."  Tr. at

121:24–122:2; *Am. Safety Council, Inc. v. United States* 122 Fed. Cl. 426, 435–36 (2015).  The court in *American Safety Council* found the agency's use of intellectual property clauses in its solicitation constituted an undue restriction of competition, violating CICA.  122 Fed. Cl. at 435–36.  The holding there, however, did not turn on an argument the agency excluded plaintiff for non-compliance with a provision of the FAR.  *American Safety Council* is, therefore, distinguishable.  *See id.* at 436.  Plaintiff in this case has not identified any case in which a court found a CICA violation when an agency excluded an offeror for its inability to comply with FAR requirements.

Plaintiff argues a majority of bidders still in the competitive range for a contract award represents an undue restriction on competition when the offeror is disqualified for an invalid reason.  Tr. at 121:10–14.  In the DOS solicitation, the government notes three of five bidders remained competitive—two of which were joint ventures and "were able to navigate the SAM registration."  Tr. at 121:17–20.  Plaintiff, on the other hand, was excluded from the competition for failing to comply with the SAM registration requirement under section L.11.1 of the solicitation.  Gov't Cross-MJAR at 6; *see supra* Section VI.A.3.  Plaintiff did not follow the plain terms of the solicitation, so DOS acted rationally when excluding plaintiff's offer.  *See supra* Section VI.C.  A determination the government's exclusion of plaintiff constitutes a violation of CICA's mandate to promote competition would mean any offeror who is excluded for not meeting the solicitation's required terms would have a valid claim for a CICA violation.  Given this absurd result, the plain terms of the solicitation, and the fact several bidders remained in the competitive range, DOS's exclusion of plaintiff for failure to comply with the solicitation's SAM registration requirements did not unduly restrict competition in violation of CICA.[9]  41 U.S.C. § 253; *see Garufi*, 238 F.3d at 1332.

## VIII.  Plaintiff's Request for a Permanent Injunction

Plaintiff seeks "injunctive relief ordering the Government to include CGS-ASP's proposal for evaluation[.]"  Pl.'s MJAR at 14.  This court considers the following factors when determining whether to issue a permanent injunction:  "(1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).  Based on the first factor, plaintiff is not entitled to injunctive relief because plaintiff does not prevail on the merits.  The Court, therefore, does not consider the remaining factors and denies plaintiff's request.  *See Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 357 n.32 (2001) ("Absent success on the merits, the other factors are irrelevant."), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003).

---

[9] The government argues under the standard set forth in *Blue & Gold*, plaintiff waived a CICA violation argument by not raising its concerns about the solicitation's FAR 52.2407 requirements prior to submitting its proposal.  Gov't Cross-MJAR at 23–24 (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007)).  The *Blue & Gold* analysis is inconsequential to the Court's holding because there was no genuine defect with respect to the government's application of FAR 52.204-7 to raise and thus no CICA violation.  *See Blue & Gold*, 492 F.3d at 1313 (holding "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims").

IX.     **Conclusion**

For the foregoing reasons, the Court:  (1) **DENIES** plaintiff's motion to complete and supplement the administrative record, ECF No. 20; (2) **DENIES** plaintiff's motion for judgment on the administrative record, ECF No. 26; (3) **GRANTS** the government's cross-motion for judgment on the administrative record, ECF No. 27; and (4) **FINDS** as **MOOT** the government's partial motion to dismiss, ECF No. 27.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge
